[Crim. No. 3777. Second Dist., Div. Three. June 14, 1944.]

THE PEOPLE, Respondent, v. RALPH TOM AVERY, Appellant.

Leola Buck Kellogg for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

BISHOP, J. pro tem.—Feeling aggrieved at a judgment of conviction, based on ten verdicts of guilty, and at his inability to obtain a new trial, the defendant has appealed. He finds fault with the scope of the information and criticizes a ruling on the admission of evidence and the silence of the instructions on three matters. The limits of the defendant's attack upon the sufficiency of the evidence are fairly presented in these words taken from his closing brief: "The defendant had and has no occasion to challenge the claims that the crimes charged were committed by some man or by several different men. His primary interest lay and lies in proving the negatives, that *he* was not present. In addition to his clear evidence of alibi, he greatly relies on the fact that there was no legally sufficient proof that he was present on any of these occasions." We shall find that the evidence abundantly supports the conclusion that the defendant was the assailant present on every occasion charged, and that no

error occurred which would justify a reversal of either the judgment or order appealed from.

Defendant argues that the information joined offenses which were of different classes and not 'connected in their commission, with the result that the trial court lacked jurisdiction and that he was denied a fair trial. There were, we find, ten counts in the information. Count I charged that the defendant had, on June 1, 1943, robbed victim one, and in count II it was alleged that on the same first day of June he had raped her. Counts III and IV gave June 3, 1943, as the date when the defendant attempted to rape victim two and did rob her. On June 20, 1943, according to counts V and VI, he attempted to rape victim three and successfully robbed her. Attempts to rape and rob victim four on June 24, 1943, were set forth in counts VII and VIII, while similar offenses, in which victim five was the object, occurring on July 9, 1943, were charged in counts IX and X.

If it was error to join these several charges in one information, the error was one of procedure, not of jurisdiction, and does not justify a reversal unless it resulted in prejudice to the defendant. (*People* v. *Duane* (1942), 21 Cal.2d 71, 78 [130 P.2d 123, 127].) Whether or not the procedure was technically wrong depends upon the interpretation to be placed upon these provisions of section 954, Penal Code: "An . . . information . . . may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts. . . ." The five charges of rape and attempted rape were properly included in a single information, for plainly they belong to the same class of crimes. (See *People* v. *Warriner* (1918), 37 Cal.App. 107, 108 [173 P. 489, 490]; *People* v. *Thorn* (1934), 138 Cal.App. 714, 734 [33 P.2d 5, 15].) The same is true of the five counts of robbery and attempted robbery. (*People* v. *Duane, supra*, 21 Cal.2d 71, 76 [130 P.2d 123, 126].) Each of the offenses of the robbery class was connected in its commission with one of the offenses of the rape class. The combination of these ten charges in one information may not have been authorized by the letter of section 954, but it neither violated the spirit of the section nor deprived the defendant of a fair trial. Had the rape and attempted rape charges been embraced in their own in-

formation, upon the trial the evidence would not have differed in any material way from that before us, for the force and fear involved in each rape charge either began in and continued over from the corresponding robberies or they were common to both offenses. Nor does it appear at all likely that the defendant was found guilty of any of the robbery charges because of the further facts brought out in support of the rape accusations. We do not consider the case of *People* v. *Duane, supra* (with its seven separately charged offenses, consisting of three separate robberies, three kidnappings with intent to rob, and an assault with force and violence with intent to rob), as an authority that the procedure in this case was entirely authorized by the statute. However, it strongly supports our conclusion that we should not reverse this case, for it appears to us that defendant Avery, like defendant Duane, was not prejudiced by the procedure followed.

█ The question just discussed and two or three other procedural errors, which the defendant claims are revealed by the record, involve, to a greater or less degree, the contentions that the evidence either fails to link the defendant with the ten offenses of which he was found guilty or that at best the links are weak. We find the evidence so sufficient that the contention, that it is not, does not merit a recital of the testimony of the five victims. Each stated that she was face to face with her assailant under conditions when his face could be observed; it was observed; the assailant, in each instance, was identified as the defendant. In support of the claim that the identifications are doubtful, attention is called to the facts that the June 1st victim described the defendant as clean shaven; on June 3d, he had a mustache; on June 20th, and June 24th, he was without one; while his fifth victim discerned one forming a very, very light line on July 9th. At the time of the trial his mustache was "flourishing," according to victim five, as compared with what it was when he attacked her. The mustache that the defendant wore at the time of the trial was described for the record by the trial judge as a "thin black mustache, probably an inch and a half from one extremity to the other . . . I can't tell the shape of his mustache from here." Such a mustache, obviously, could come and go from day to day without casting a shadow of doubt upon the positive character of the identification made by each of defendant's victims.

We find, then, the evidence of identification to be strong and the several grounds of appeal, dependent on its weakness, to be correspondingly lacking in force. This is certainly true of the criticism made of the court's action in sustaining an objection to a question asked of victim two, during her cross-examination. It had been developed that the witness had been present at a line-up at the Central Station, but had not identified the defendant, and that she and two unindentified women had been taken to another line-up at the University Station. Then the trial continued: "Q. Now, at the University Station you met some of the other witnesses in this case? A. I did not know they were at that time. There was two other ladies there in the car, we all three went into the station with the officers. Q. Did you discuss this matter with the ladies? A. I beg pardon, sir? Q. Did you discuss your case with these other women? A. Just the neighborhood in which we lived, we remarked about how close we all lived together. That was all that was remarked. Q. And did you talk to them about what happened to you that evening? A. Not at the time, no, sir. Q. I beg your pardon? A. Not at the time, no, sir. Q. Not at that time? A. No, sir. Q. Well, when did you discuss it with these other people? MR. JOHNSON: I object to that as irrelevant and immaterial, having no bearing upon the case at all. THE COURT: The objection is sustained. Q. By MR. SOLOMON: By the way, was there any money in the pocketbook that was taken from you? A. As I recall, there was about 41 cents."

Extravagant claims are made of the prejudice of the ruling. "Clearly something happened" between the first line-up, when "identification of this defendant failed" and that at the University Station, "after photographs showing the defendant with a mustache were exhibited to the identifiers," the intimation being that the "something" was a get-together of the victims. We think it is clear that defendant's present counsel, who did not represent him at the trial, takes a present view of the unanswered question entirely out of focus with that prevalent at the trial. The different result of the two line-ups was due, it was quite obvious, to the fact that at the time of the first, June 4th, the defendant was not present to be identified; he was still at large. Moreover, victim two had been quite positive in her identification: "I would know him at any place because his face was within 2 inches

of mine. I couldn't mistake him, he was directly in the light." And lastly, there was no evidence that she had seen any picture of the defendant at any time. If, as defendant's present counsel would have us believe, the question had a significance not apparent when asked, it should have been pointed out to the trial court. We do not consider it to have been error for the trial court to have sustained an objection to the question, under the circumstances. Moreover the ruling is defensible on the ground that the question assumed a fact not in evidence, that is, that victim two ever had discussed what happened to her with "these other people."

■ The next "error" to which the defendant points critically, was the action of the trial judge remanding the defendant to the custody of the sheriff during the course of the trial, shortly after the defense began to put on its case. In justification of his act the trial judge referred to section 1129 of the Penal Code, reading: "When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly." We are of the opinion that the constitutionality of the section is not open to debate before us (see *People* v. *Dysart* (1940), 39 Cal.App.2d 287, 289 [102 P.2d 1091, 1092], and cases cited), and unquestionably by its terms it authorized the action taken by the trial court. The action was taken after the jury had departed, at the close of a day's session, and so far as appears there was nothing consequent upon it that prejudiced the defendant with the jury. The evil that the defendant sees in the very act of depriving an accused of his liberty on bail during the course of his trial, is implicit in the code section itself, which expresses a public policy determined by the Legislature, and which is not to be used as an excuse for reversing a judgment.

Defendant's remaining contentions center around three instructions which were not given—nor requested. "It is incumbent upon a court in a criminal case" we find it said in *People* v. *Putnam* (1942), 20 Cal.2d 885, 890 [129 P.2d 367, 369, 370], "to instruct the jury of its own motion, charging them fully and fairly upon the law relating to the facts of the case." ■ It is quite clear that this should be so with respect to such rules of law as the necessity for

corroboration of the testimony of an accomplice, that is, rules of law prescribed by the code and of which it is not to be presumed that a lay jury would have knowledge. When we get into the field where the instruction is one dependent not upon any statutory provision, but upon human experience, a field in which the jury is supposed to be on familiar ground, ordinarily the trial judge is under no duty to instruct the jury that the testimony of certain witnesses should be examined with caution. However, attention is called to *People* v. *Putnam, supra,* 20 Cal.2d 885, 889 [129 P.2d 367, 369], and *People* v. *Trumbo* (1943), 60 Cal.App.2d 681, 688 [141 P.2d 225, 228], where judgments of conviction were reversed because the trial court failed of its own motion to give a cautionary instruction to the effect that a charge of a sex offense is one easily made and difficult to disprove and that the testimony of the prosecution witness should be examined with caution. These cases give recognition, however, to the principle that the circumstances of each case must determine whether the failure to give a precautionary instruction was prejudicial, and under the circumstances of this case the trial court's failure to give the unrequested instruction was clearly not prejudicial. This is so because, as already noted, the defendant does not question the veracity of the five victims in their accounts of what happened to them, and as we review their testimony there appears no cause to believe that any part of these accounts was invented. Defendant's difficulty was not enhanced by the nature of the charges against him; he had the difficulty faced by any defendant whose position is, not that a crime was not committed, but that he was not the guilty one. We have no hesitancy in concluding that the defendant was not prejudiced by the court's failure to give the jury the cautionary instruction, not requested.

 Nor are we of the opinion that the defendant was entitled to the second unrequested instruction, of whose absence complaint is now made—in these words: ''It was vitally necessary to point out to the jury that identification from appearance is entirely a matter of opinion, belief, impression or judgment of a witness that the defendant is the same person seen by the witness on a previous occasion and that this being true the opinion of one witness that the defendant is the man she saw on one occasion could not as a matter of law

be rendered more trustworthy by the opinion of another witness that he is the man the second witness saw on an unrelated occasion." Such an instruction would be an invasion of the jury's province. We are aware of no history of erroneous convictions which warrants the conclusion that unless told what to do, respecting the subject matters covered by the quotation just made from defendant's brief, a jury is likely to err.

The last ground of appeal to engage our attention is the claim that the jury should have been instructed that it was necessary for them to agree on the defendant's guilt as to each count before they found him guilty of that count. The reporter's transcript before us affirmatively shows that a separate, signed, verdict of guilty was rendered as to each of the ten counts, and that as to each verdict all the jurors answered affirmatively this question: "Is this your verdict, so say you one, so say you all?" The failure of the court to instruct the jury to do the very thing they did do, is not a ground upon which a reversal may be based.

The judgment of conviction and order denying a new trial are affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 10, 1944. Carter, J., and Schauer, J., voted for a hearing.