[Crim. No. 2115. Third Dist. May 3, 1949.]

THE PEOPLE, Respondent, v. PETER JAMES VAN DE
WOUWER, Appellant.

634

Peter James Van De Wouwer, in pro. per., for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged in two informations with separate crimes of rape and robbery of different individuals. The first information charged him with rape of Sedona Yarger committed on June 8, 1948. The second information was couched in two counts. The first count charged him with rape of Myrna Eunice Everson committed on March 21, 1948. The second count charged him with robbery of the husband of Mrs. Everson committed with the use of a revolver. The robbery was committed as a part of the transaction of the last mentioned crime of rape. Both informations were filed on August 5, 1948. At the trial the defendant was represented by able counsel. The two cases were consolidated for trial without opposition. The jury found the defendant guilty of the three crimes as charged. A motion for new trial was denied. The court sentenced the defendant to state prison for the term prescribed by law and directed that the terms of imprisonment for the counts of rape and

robbery as charged in the second information should run concurrently. But the court directed that the terms of imprisonment for the crimes stated in the different informations should run consecutively. The defendant appealed from the order denying the motion for new trial and from the judgments of conviction. On appeal the defendant appears in proper person.

It is contended the verdicts and judgment are not supported by the evidence chiefly because of a lack of identification of the defendant; that the court erred in consolidating the causes for trial; that the court erred in failing to properly instruct the jury with respect to the credibility of witnesses, and that the district attorney was guilty of prejudicial misconduct.

In spite of some conflict regarding the identity of the defendant, we are convinced there is an abundance of evidence of the identity of the defendant and adequate proof to support the judgments. The mere variance in proof of the manner in which the defendant was clothed is immaterial. He was positively identified by several witnesses. The variance affects only the weight of the evidence and merely presents questions for reconciliation by the jury. (*People* v. *Avery*, 64 Cal.App.2d 850, 854 [149 P.2d 758]; *People* v. *Fleming*, 58 Cal.App.2d 37, 44 [136 P.2d 88].)

The circumstances of this case are somewhat startling. The evidence depicts the conduct of a depraved, bold and reckless man.

Upon proof of the rape which occurred in the trailer on June 8, 1948, the victim, Mrs. Sedona Yarger, testified positively to the identity of the defendant as the man who committed that crime. She was corroborated in her identification of the defendant as her assailant by Mr. Bertolone and his two workmen who saw him coming from the direction of her home and passing the place where they were building a house at 2 o'clock in the afternoon, immediately following the time when the rape occurred. They described the manner in which he was dressed and his appearance.

The defendant was a comparative stranger in that community. He had not resided there long. He was formerly employed in the United States Navy, and frequently wore Navy clothes, including a blue knitted stocking cap. He often wore dark glasses. He was about 5 feet, 10 inches tall. He had a light complexion, blue eyes, light brown hair, showing gray over the temples, and possessed a prominent, bridged

nose. He was 31 years of age, married and is the father of one child.

Mr. and Mrs. Yarger arrived from Minnesota in their automobile and trailer in January, 1948. Mrs. Yarger was 45 years of age. They had three sons and a daughter. They located on Palmer Creek, near the highway, about a quarter of a mile from Fortuna. He was a builder and carpenter, and was then employed at the Gist Auto Court on the other side of Fortuna. They were building a home on their property. The trailer was parked in their yard. They slept in the trailer while they were completing their house. Mr. Yarger was away from home in the daytime during working hours. He returned for luncheon and after working hours. A short distance from their home Fred Bertolone was building a home on a hillside between the Yarger house and the highway. He had two workmen assisting him. Mr. Arthur Yarger patronized the Salliday barber shop in Fortuna. The defendant, who was employed there, knew him, and had cut his hair on two or three occasions. Evidently, the defendant knew of his employment away from his home during the daytime. Prior to June 8th, the date of the alleged rape, Mrs. Yarger had her hair trimmed on one occasion by Mr. Salliday. The defendant worked at the adjoining chair and talked to her. During that conversation she mentioned the fact that they had a trailer for sale.

On June 8th, about 2 o'clock in the afternoon, while Mr. Yarger was working away from home, and no person other than Mrs. Yarger was about the premises, a man suddenly appeared at their home. He wore a blue Navy knitted stocking cap, dark glasses, and a Navy jacket. Owing to the difference between the way he was clothed when she saw him in the barber shop and the manner in which he was then dressed, she failed to recognize him. He did not remind her of their former meeting. He did not introduce himself, but asked her if they had a trailer for sale. She replied that they had one which would be for sale later when their house was completed. He insisted on inspecting it then. She told him it was not in proper order at that time, but, with the prospect of a sale, she consented to show him the trailer. They went together to the vehicle. She entered first and he followed her. While she was showing him the cupboards and other furnishings, he suddenly poked a nickel-plated revolver against her back and ordered her to take off her clothes. She was hysterical and wept, protesting against his demand, but fearing that she would be shot if she refused, she removed her clothing and

he forcibly raped her on the bed at the rear of the trailer. He placed his revolver on the icebox near the entrance to the car, where it remained during that period of time. As he departed, he picked up his revolver and told her that if she informed anyone of that affair he would come back and "take a pot shot at her." She testified that she was in mortal fear of him. In terror, she watched him leave the premises and go up the hill toward the Bertolone house, which was a short cut back to the Fortuna highway. After he had passed from her sight, she left the trailer and rushed to the house and, taking their automobile, she drove directly to the Gist Auto Court where her husband was employed and told him about the affair. He consulted another employee about the crime and they phoned to the officers. She described the defendant and the manner in which he was clothed, but said she did not recognize the man as anyone she knew. Mr. and Mrs. Yarger drove directly to the office of Dr. Goble, who made a physical examination. He testified positively, from an analysis of the contents of the vagina, that intercourse had occurred within four hours of his examination.

Two or three days later Mrs. Yarger chanced to see the defendant on the street in Fortuna, and immediately recognized him as her assailant, and also as the barber in Salliday's shop. She promptly informed her husband that the barber was the man who had raped her. They afterward went to the barber shop, and when the defendant saw them entering the shop he darted out through a back door. The officers were informed of the identity of the man and he was arrested. At the trial Mrs. Yarger positively recognized and identified him as her assailant. Mr. Bertolone and his two workmen, Lyle Jensen and James Boughner, who were working on Bertolone's house near which the defendant passed as he left the Yarger premises after his commission of the crime, about 2 o'clock p.m. on June 8th, positively recognized the defendant as the man who passed their house at that very time. They described his manner of walking, and the way in which he was clothed. Each of them said he wore a blue Navy knitted stocking cap, dark glasses and Navy or Army fatigue clothes. He was a stranger to them. There can be little doubt the defendant was the man who committed that crime.

With respect to the other joint charges of rape and robbery committed by the defendant on March 21, 1948, about six weeks previous to the foregoing described crime of rape, both

victims positively identified the defendant as the man who robbed John Everson and raped his wife. They recognized him from his height, form, complexion, voice, the color of his eyes and hair, some of his features, including a bridged nose, and his clothing.

John E. Everson and his wife, who was 20 years of age, were married March 20, 1948, in Sonoma County. They live in Piru, Ventura County. They were driving north on the Redwood Highway in their automobile on their honeymoon. The husband drove the car. On March 21st they passed Garberville, about 50 miles south of Fortuna, about 1:30 p.m. They were hungry and tired. They drove off the highway into Franklin Lane's Grove, and parked beside the roadway, where they ate their luncheon, and then went to sleep. It was a secluded spot, amid the trees and bushes. They were awakened by a man who approached and opened the right door of the car on the side where Mrs. Everson sat. They testified that he wore a bluish, gray hat, a pair of dark glasses, and a handkerchief covering his face below his nose. He was armed with a nickel-plated revolver. He wore a Navy jacket and fatigue trousers. He had light brown hair, tinged with gray over the temples. He was about 5 feet, 10 inches tall. He pointed his revolver at Mr. Everson and demanded his money, in a brazen "Black Bart bandit" fashion. Everson handed him his wallet containing a lonely $20 bill. It was grumblingly accepted. The bandit then turned his attention to the wife, and, threatening both of them with his revolver, he proceeded to rape her in the presence of her husband. The wife protested and cried without avail. The man then demanded the keys to the car, saying "he didn't want them to make a quick get away." He hung the keys on a bush some distance up the road, and disappeared along an obscure trail.

Mr. and Mrs. Everson found their keys, and drove back to Garberville, where they notified the officers of the rape and robbery, describing the man as best they could. They then visited a doctor for treatment of the wife. The defendant was not apprehended or arrested until after the previously-mentioned rape, which occurred June 8th. They were then notified of his arrest, and went to Humboldt County, where they saw the defendant and the clothes which he wore on the occasion of their holdup. Both of the spouses positively identified him as the man who robbed them and raped the wife on March 21st. While there is some conflict with respect to certain unimportant details, the evidence of the identity of the defendant as their

assailant is very persuasive. We conclude that the evidence adequately established his identity, and the commission of the crimes. The identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing. (20 Am.Jur. § 350, p. 325.)

 The court did not err in consolidating for trial the separate charges against the defendant. That procedure was discretionary with the court. No abuse of discretion appears. The record discloses no objection to the consolidation of the two informations for trial. No motion for separate trials was made. In one information the defendant was separately charged in different counts with the crimes of rape and robbery growing out of the same transaction. Under such circumstances the statute authorizes the uniting of such different charges in separate counts of one indictment or information. (Pen. Code, § 954; *People* v. *Avery*, 64 Cal.App.2d 850, 853 [149 P.2d 758]; 8 Cal.Jur. § 268, p. 193; 42 C.J.S. § 180, p. 1136.) The code section last cited reads in part:

"An indictment, information, or complaint may charge two or more different offenses connected together in their commission, . . . under separate counts, . . . ."

 Nor was that information improperly united with the second information against the same defendant, charging him with the commission of another rape upon a different woman in the same vicinity and within about six weeks of the time when the first alleged rape was committed. Both informations included charges of rape committed by intimidating the victims by the use of a revolver. Both offenses belong to the same class of crimes. They might have been united under separate counts of one and the same information. They were therefore properly consolidated for trial. In the text of 8 California Jurisprudence, page 193, section 268, which is supported by adequate authorities, it is said:

"The Penal Code [§ 954] provides that if two or more indictments or informations are filed in cases where the charges may be charged in separate counts in one indictment or information, *the court may order them to be consolidated.*" (Italics added.)

In the case of *People* v. *McClain*, 55 Cal.App.2d 399 [130 P.2d 973], wherein the defendant was charged in different informations with crimes of the same class committed upon different persons on separate dates, the informations were consolidated for trial. On appeal the court said, at page 402:

"The fact that the different crimes charged against the defendant were committed at different times and places does

not deprive the trial court of power to order the consolidation of the informations for trial, if the offenses charged are of the same class of crimes. (*People* v. *Feigelman,* 65 Cal.App. 319, 320 [223 P. 579].) Clearly in the instant case the several indictments charged offenses of the same class of crimes and the trial court did not abuse its discretion in ordering the informations consolidated for the purpose of trial.''

For discussion of offenses of the same class which may be properly united under separate counts in the same information or indictment, see *People* v. *Bundte,* 87 Cal.App.2d 735 [197 P.2d 823].

Moreover, in the present case the defendant waived his right to separate trials of the charges of rape, by failing to object to the consolidation of the cases, and by failing to move for separate trials.

The appellant is mistaken in asserting that the court failed to properly instruct the jury regarding the credibility of witnesses when it appears that their testimony is conflicting or erroneous with respect to the identification of the defendant by the clothing which he wore or his personal appearance at the time of the alleged rape. We find that the court instructed the jury as follows:

''In determining the credibility of a witness, you should consider whether his testimony is, in itself, contradictory; whether it has been contradicted by other credible witnesses, whether his statements are reasonable or unreasonable; whether they are consistent with other statements, or with facts established by other evidence, or admitted facts.

''You may also consider the witness' manner of testifying on examination; the character of his testimony; the bias or prejudice, if any, manifested by him; his interest or absence of interest in the action; his recollection, whether good or bad, clear or indistinct, concerning the facts to which he testifies; his inclination or motives; together with his opportunity of knowing of the facts whereof he speaks.

. . . . . . . . . . . . . . .

''If any witness examined before you has wilfully sworn falsely as to any material matter, you may distrust his entire testimony.''

The court also instructed the jury that it should examine the testimony of the prosecuting witnesses ''with caution.'' The jury was very fully and fairly instructed upon every essential issue of the charges involved. We are directed to no error in the instructions, and we find none.

■ There is no merit in appellant's contention that the district attorney was guilty of prejudicial misconduct in propounding improper questions to the witnesses at the trial. No specific instances of such alleged improper questions are designated, and no reference to pages in the transcript where such questions appear is stated. The appellant merely makes the general statement that "The reporter's transcript shows a host of sustained objections to improper questions and the admonitions of the court to the jury to disregard them." It thus appears that if any improper questions were asked at the trial, the objections thereto were sustained and the jury was instructed to disregard them. We must assume, in the absence of specific assignments of such conduct, that the jury was not prejudiced thereby. Moreover, in the absence of authorities or references to the transcript where such alleged misconduct may be found, the general charge of prejudicial misconduct should be disregarded. (*People* v. *Serpa*, 67 Cal.App.2d 327, 333 [154 P.2d 6].)

For the foregoing reasons the motion for a new trial was properly denied.

The order denying a new trial and the judgment are affirmed.

Adams, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1949.