Filed 9/19/14  P. v. Rodriguez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>EDWIN RODRIGUEZ,<br><br>  Defendant and Appellant. | G049415<br><br>(Super. Ct. No. 10CF2843)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, W. Michael Hayes, Judges.  Affirmed.

Edwin Rodriguez, in pro. per.; James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*        \*        \*

Defendant Edwin Rodriguez was convicted by jury of the following offenses: Count 1- Robbery of Daniel Flores on September 23, 2010 (Pen. Code, §§ 211, 212.5, subd. (c))[1]; Count 2 — Robbery of Douglas Schmidt on September 23, 2010 (§§ 211, 212.5, subd (c)); Count 4 — Robbery of Jose Contreras on September 28, 2010 (§§ 211, 212.5, subd. (c)); Count 5 — Attempted robbery of Luis Flores on September 28, 2010 (§§ 664, 211, 212.5, subd. (c)); Count 6 — Assault with a deadly weapon upon Luis Flores on September 28, 2010 (§ 245, subd. (a)(1)); Count 9 — Carrying a loaded unregistered firearm in public on November 6, 2010 (former § 12031, subds. (a)(1), (a)(2), now § 25850 subds (a), (c)); Count 10 — Carrying a concealed dirk or dagger on November 6, 2010 (former § 12020, subds. (a), (c)(4), now § 21310); and Count 11 — Resisting a police officer on November 6, 2010 (§ 148, subd. (a)(1)). In addition, the jury found true the allegations that defendant personally used a firearm in committing the offenses charged in counts 1, 2, 4, and 5 within the meaning of section 12022.53, subdivision (b).

The court sentenced defendant to an aggregate state prison term of 16 years, comprised of the upper term of five years on count 1, a consecutive term of 10 years for the arming enhancement on count 1, and a consecutive term of one year on count 6 (one-third the mid-term). Sentences on the remaining counts and enhancements were imposed and ordered to run concurrently with the sentences on count 1.

Defendant appealed the judgment and we appointed counsel to represent him. Counsel did not argue against defendant, but advised the court he was unable to find an issue to argue on defendant's behalf. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant was given an opportunity to file written argument in his own behalf, and he has done so, submitting a two-page handwritten brief.

---

[1] All further undesignated statutory references are to the Penal Code.

As explained below, we agree with counsel's assessment; there are no arguable appellate issues. And the issues raised by defendant are unmeritorious. We affirm the judgment.

FACTS

As is normally the case in appellate review, we recite the facts in the light most favorable to the judgment. (See e.g., *People v. Mayfield* (1997) 14 Cal.4th 668, 767.) The charges against defendant arose from three separate incidents occurring respectively on September 23, 2010, September 28, 2010, and November 6, 2010.

*September 23, 2010 — Counts 1 and 2*

Douglas Schmidt and Daniel Flores were roommates.[2] Late in the night of September 22 or early morning September 23, the pair walked to a convenience store to "buy some stuff." On their way home, the roommates were approached by two men; one was on a bike, the other was on a scooter or skateboard. The man on the bike pulled out a "black, hand-sized gun," and demanded the roommates turn over their property or money. The other man, who was holding a knife, reached into Daniel's back pocket, took his wallet, and removed $60 to $70, then reached into his front pocket and took his cell phone. Schmidt gave all he had — a lighter and some change from his pocket. Schmidt later reviewed several six-pack photograph arrays and identified defendant as the "man with [the] gun." This incident was the basis of the robbery convictions on counts 1 and 2.

_____

[2] Because two victims in this case bear the surname, Flores, we refer to each victim by his first name.

3

*September 28, 2010 — Counts 4, 5, and 6*

Around 2:30 or 3:00 in the morning of September 28, 2010, Luis was being driven home by a friend named Contreras after drinking together at a bar.[3] Luis sat in the right rear passenger seat. Luis's girlfriend was also in the vehicle. They stopped at the drive-through window of a taco shop. A man approached (later identified as defendant) leaned into the open widow on the passenger side, and pointed a gun at the driver, Contreras. Luis described the gun as black, and said it looked "just exactly the same thing as an officer's gun." The gun was not a revolver. Defendant demanded "everything [they] had." Contreras handed over a cell phone and about $13 in his wallet. Defendant then turned his attention to Luis, pointed the gun at him and demanded his silver necklace. Luis refused to turn the necklace over, choosing instead to get out of the car. Defendant walked away and Luis followed to confront defendant. Defendant and Luis started a fist fight, but then defendant pulled out a machete. Defendant swung the machete three times, striking Flores twice, once on his head and once on his shoulder. Defendant then dropped the machete and walked away. After police and an ambulance arrived, Luis was transported to a hospital where his wounds were closed with stitches and staples. The police later recovered the "machete-style knife" from the street directly south of the taco shop. This incident was the basis of the convictions for robbery, attempted robbery, and assault with a deadly weapon on counts 4, 5, and 6.

*November 6, 2010 — Counts 9, 10, and 11*

On November 6, 2010, at approximately 8:00 p.m., Santa Ana Police Detectives Caesar Flores and Gerardo Zuniga were patrolling in a "marked-black-and white police vehicle with the overhead lights mounted in the interior of the vehicle, commonly referred to as a slick top." The vehicle had a police emblem on the side doors,

___

[3] Luis did not know the first name of his "friend." The information listed the friend's first name as Jose. Jose Contreras did not testify.

4

and the words "'gang unit' in large print in the back quarter panels." The officers observed a white Toyota Camry with dark tinted windows and decided to make a "traffic stop for the tinted window violation." The Camry sped off at a high rate of speed, and the officers activated the overhead lights and siren. The Camry came to a stop in the driveway of a home with its lights off. The right rear door of the vehicle swung open immediately, and an individual (later identified as defendant) started running away. Detective Zuniga gave chase on foot. Detective Flores maneuvered the police vehicle to follow the chase. Detective Flores heard detective Zuniga yell, "gun, gun." The police vehicle and detective Zuniga were able to corner defendant, and when defendant attempted to reach into his pocket, detective Zuniga fired his taser and immobilized defendant. Defendant was taken into custody and searched. A 10-inch kitchen knife was recovered from his left pant pocket. The officers also recovered a .45 caliber compact semiautomatic gun between the street and the sidewalk in the approximate location where detective Zuniga had yelled "gun, gun." Detective Zuniga had seen defendant throw the gun during the chase, causing him to yell "gun, gun" to alert his fellow officer. When recovered, the gun had "one unspent round in the chamber and six additional rounds in the magazine clip." This incident was the basis of the convictions for carrying a loaded unregistered firearm in public, carrying a concealed dirk or dagger, and resisting a police officer, counts 9, 10, and 11.

DISCUSSION

Appointed counsel identified three issues which he considered, but concluded the issues were not arguable on appeal. We have independently reviewed the entire record, including the potential issues considered by counsel, and we likewise are unable to find an arguable appellate issue.

5

Defendant has submitted a supplemental brief in which he raises three issues which he contends resulted in an unfair trial: (1) His counsel's inability to cross-examine Contreras (the driver of the vehicle at the taco shop robbery) because Contreras did not appear at trial; (2) The consolidation of three separate cases for trial, and the court's denial of his motion to sever the cases after they were consolidated; and (3) The jury's apparent failure to believe his testimony that the gun he used at the robberies was a toy BB-gun, and not the gun recovered during the chase on November 6, 2010. (See *People v. Kelly* (2006) 40 Cal.4th 106, 110 [In *Wende* proceeding, appellate court must address issues raised personally by appellant].) As to the last issue, he contends the consolidation of the gun possession charge with the robbery charges was prejudicial because the jury was allowed to associate the .45 caliber weapon he discarded with the gun used in the robberies.

*Inability to Cross-examine Jose Contreras*

The failure of Contreras to appear at trial, and defendant's consequent inability to cross-examine him, does not constitute error. There simply is no rule of law requiring the victim of a crime to appear and testify if other evidence is sufficient to establish guilt beyond a reasonable doubt. In contending otherwise, defendant misapprehends the law. We "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) That standard was met here by the testimony of Luis, who witnessed defendant pointing a gun at Contreras and demanding everything he had. The right of confrontation, including the right to cross-examine a witness, extends to those who either testify in court or whose out-of-court statements are otherwise admitted in

6

evidence.  Since Contreras did not testify, and there was no evidence of any of his out-of-court statements, there was nothing to cross-examine Contreras about.

*Consolidation of Cases and Refusal to Sever*

The crimes committed on September 23, September 28, and November 6 were originally charged in three separate accusatory pleadings.  The three pleadings were later consolidated and an information was filed alleging the offenses from all three original pleadings.  The court later denied defendant's motion to sever.

The court did not abuse its discretion by consolidating the three cases, nor in refusing to sever them for trial.  "'[I]f two or more indictments or informations are filed in cases where the charges may be charged in separate counts in one indictment or information *the court may order them to be consolidated.*'"  (*People v. Van De Wouwer* (1949) 91 Cal.App.2d 633, 639; § 954.)  Charges may be joined when the accusatory pleading alleges "two or more different offenses connected together in their commission, . . . or two or more different offenses of the same class of crimes or offenses."  (§ 954.)  The California Supreme Court has identified the factors we must consider in deciding whether the trial court has abused its discretion in denying a motion to sever.  (See *People v. Marshall* (1997) 15 Cal.4th 1, 27-28.)  These same factors guide our review of the trial court's decision to consolidate accusatory pleadings.  (See *Calderon v. Superior Court* (2001) 87 Cal.App.4th 933, 939 [applying the *Marshall* factors to evaluate propriety of joinder].)  "The pertinent factors are these:  (1) would the evidence of the crimes be cross-admissible in separate trials; (2) are some of the charges unusually likely to inflame the jury against the defendant; (3) has a weak case been joined with a strong case or another weak case so that the total evidence on the joined charges may alter the outcome of some or all of the charged offenses; and (4) is any one of the charges a death penalty offense, or does joinder of the charges convert the matter

7

into a capital case." (*Marshall*, at pp. 27-28.) "A determination that the evidence was cross-admissible ordinarily dispels any inference of prejudice." (*Id.* at p. 28.)

Here, the evidence supporting the charge of carrying a loaded unregistered firearm in public about five or six weeks after the charged robberies would have been admissible in the trial of each of the two robberies. The gun in defendant's possession matched the description given by the victims and witnesses to the robberies. Evidence that defendant was found in possession of such a gun shortly thereafter would rebut defendants trial testimony that the gun was wielded by his accomplice in the first robbery, and, moreover, it was an air gun, not a real .45 caliber compact semiautomatic, and further that at the second robbery he had used the same air gun himself. And, of course, the two robberies were the same class of offense.

With the possible exception of the use of the machete, none of the charges was more likely to inflame the jury than any of the other charges, and a weak case had not been joined with a strong case. The cases were equally strong, supported by eyewitness testimony and the admission of defendant that he was present at both robberies, was the person who pointed the purported "air gun" at the second robbery, and used the machete, albeit in self-defense. The use of the machete, while potentially inflammatory, was itself connected together with the commission of the robbery at the taco shop. And finally, the joinder here did not convert the case to a capital case. In sum, the court did not abuse its discretion in consolidating these cases for trial nor in denying defendant's motion to sever.

*Substantial Evidence Supports the Jury's Implied Finding That the Gun Used in the Robberies Was a Real Firearm*

In arguing that the gun used in the two robberies was a BB gun or air gun, and not a real firearm, defendant is asking this court to reweigh the evidence. That is not our function. "If the circumstances reasonably justify the jury's findings, the reviewing

8

court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1139.) Here, the evidence supports the jury's findings. We will not reweigh that evidence.

DISPOSITION

The judgment is affirmed.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.