[Crim. No. 4104. In Bank.—September 1, 1937.]

THE PEOPLE, Respondent, v. SENCIO PATUBO, Appellant.

Stanley K. Lawson and J. P. Muller for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Defendant Sencio Patubo, a 25-year-old Filipino, was charged by information with the murder in Monterey County on June 5, 1936, of David Dado, a Filipino, otherwise known as Big Boy. Defendant pleaded not guilty and went to trial. The jury returned a verdict of murder in the first degree, without recommendation, and judgment followed, imposing the death penalty. The case was brought to this court by the automatic appeal provision of section 1239 of the Penal Code. The appeal has, however, been briefed by both sides. Three contentions are advanced by appellant, i. e., (1) that the evidence does not support the verdict of murder in the first degree because there was no evidence of premeditation; (2) that an instruction was given which was not adapted to the evidence; and (3) that the trial judge exceeded the scope of proper judicial comment in that his remarks were argumentative and not impartial.

The crime was committed shortly before 11 P. M. on the evening of June 5, 1936, in the Avila dance hall and poolroom located in Monterey County about one and one-half miles out of Salinas on the road leading to Castroville. This dance hall was frequented largely by Filipinos employed on lettuce farms in the vicinity and by a few white girls supplied as dancing partners. On the night in question there were some thirty or more persons present in the hall. The crime marked the culmination of an altercation in which the following Filipinos became involved: Frank or Frisco Nozallo, Leon Regenet, appellant Patubo, and Big Boy, the deceased.

Frisco, Leon and appellant somehow became engaged in a tussle, apparently with appellant and Leon lined up against Frisco. This scramble then developed into an altercation in which blows were exchanged between Leon and Frisco, with appellant passively standing near by. Big Boy entered the dance hall and attempted to intercede between the two fighters, making such remarks as: ''Why you fellows fighting, we are just all Filipinos,'' ''What is going on here, stop fighting'', ''Wait a minute''. As Big Boy drew near to the men, appellant stepped forth, drew a revolver, and holding it close to Big Boy's stomach, fired. Appellant then fired a second shot into Big Boy's chest, as he fell to the floor, shot him again, either once or twice. The evidence is that appellant fired either three or four shots at Big Boy, all of which hit their mark, and then, standing over Big Boy, attempted still another shot, but when the revolver only ''clicked'' instead of firing, he then struck Big Boy on the head with it. Big Boy was removed to the hospital at 11:48 P.M. and expired about an hour later, at 12:30 A. M.

On the trial appellant attempted to show that he shot in self-defense. It appears that Frisco and Leon, in their fight, were struggling for the possession of an ice pick as a weapon, and Frisco finally succeeded in getting the ice pick and stabbed Leon in the shoulder with it. Appellant, testifying in his own behalf, stated that on the night in question Frisco had asked him for a gun, stating that he wanted to shoot someone; that he told Frisco to keep quiet; that then Frisco started fighting with him (appellant); that Leon interceded to help appellant fight Frisco; that appellant then saw Leon bleeding at the shoulder and next saw the ice pick; that he saw a gun pointing at him (appellant) and thought it was Frisco or someone pointing it at him; that because he did not want to die, he then pulled his gun out and shot; that he fired three shots. Appellant stated that he did not know that Big Boy was his victim until the shooting was all over; that he had no grievance against Big Boy; that as a matter of fact Big Boy was carrying a gun, which appellant saw and extracted from his clothing after he fell to the floor. Appellant stated that when he left the dance hall he was carrying both weapons, his own and Big Boy's. He gave no explanation of the shots fired at Big Boy after he had fallen to the floor. His testimony was not consistent. He denied fir-

ing more than three shots and denied hitting Big Boy over the head after he had fallen to the floor. The prosecution's witnesses testified that Big Boy had no gun or knife in his hands at any time.

Two witnesses, Posado and Narcisso, testified to the following incident as occurring about four or five minutes before the shooting: The witnesses, Posado and Narcisso, were standing outside the dance hall where they saw appellant standing behind the door with a gun in his hand. They overheard appellant tell Leon to bring someone out, but the name of the person was not heard. Big Boy was standing near and told appellant to put his gun in his pocket. The record does not show whether appellant complied, but appellant did tell the witnesses, Posado and Narcisso, to go into the dance hall, and they did so immediately. Appellant denied this occurrence.

We are satisfied that the evidence amply justified the jury in concluding that there was a wilful, deliberate, and premeditated intent to take Big Boy's life. ▮ Premeditation is not controlled by lapse of time, which need be no greater than necessary to the formation of the intention, and the formation of the intention and the doing of the acts in pursuance of that intention may be in rapid succession. (*People* v. *Fleming*, 218 Cal. 300 [23 Pac. (2d) 28].) The intent to kill is not denied here, and indeed, no other intention can reasonably be ascribed to appellant. On this point the language of this court in *People* v. *Fleming*, *supra*, is particularly appropriate: "And where, as in this case, the assault was made in a manner that was reasonably certain to produce death, and which actually did cause death, the only rational presumption to be drawn therefrom is that the assailant intended to take the life of the person assailed." ▮ The cases cited by appellant as authority for the proposition that murder done in the heat of passion is in the second degree only, predicate their rulings upon the fact that the passion is excited by adequate provocation. (*People* v. *Elmore*, 167 Cal. 205 [138 Pac. 989] ; *People* v. *Freel*, 48 Cal. 436.) There is no suggestion of provocation in the record here. On the contrary, much of the evidence strongly indicates that appellant was the aggressor in a somewhat complicated quarrel.

▮ Appellant complains of the giving of an instruction on the effect of expert testimony. It is urged that since the only

persons who testified as experts were the doctor, whose testimony was given without objection, and Rogers, a member of the Salinas police department, the question of whose qualification was never passed upon, the jury was misled by the giving of the instruction, into placing undue weight upon the testimony of Rogers. This testimony was directed toward establishing powder burns on the clothing of the deceased to show the range at which the shots were fired. Appellant's point is that this tended to discredit the claim of self-defense by showing appellant could have made no mistake about the deceased having a gun. Since there was direct testimony that appellant held Big Boy by the arm while firing the shots and appellant himself admitted the range was no greater than six feet, no prejudice could have been suffered by the jury's having been led by the instruction into placing undue weight upon the testimony of one whose expert character had not been established. Furthermore, Rogers was never permitted to testify to the distance at which a powder burn would result, but only that it would not result at fifteen or twenty feet.

Appellant objects to certain comments made by the trial judge when instructing the jury, as being argumentative and not impartial. Among other things the judge said, addressing the jury:

"In my judgment, and judging from the evidence I have heard here, it was the intention of that man to kill Big Boy for some reason. I don't know why, but it was his intention to kill Big Boy in that pool hall that night and I believe one of the reasons . . . " (reference being made to his belief in other witnesses and to the nearness of deceased to appellant when shot). Further,

"Now you can see this man's manner of testifying in the courtroom when he was on the witness stand. He had that hangdog look of a guilty man. He could not talk hardly above a whisper and he could not talk so the court could hear him. . . . If ever a man by his appearance and his manner of giving testimony has shown himself to be a willful, deliberate and outright perjurer as to material facts in a case, the defendant in this case has been it."

Finally, "Now there is self defense in this case. No man could be safe when the man testified himself in the courtroom he fired that third shot at that poor man lying with his hands

on the floor. Is that self defense? He admits that is when he fired that third shot. He admitted that himself before you. In the opinion of the Court this man is guilty of first degree murder and the extent of the punishment he is to receive in this matter is a question for the jury."

 Under the recent amendment (1934) to section 19 of article VI of the state Constitution, a greater latitude is permitted trial judges in instructing jurors than was allowed before its adoption. (*People v. Ottey*, 5 Cal. (2d) 714–729 [56 Pac. (2d) 193].) Under the constitutional amendment,

"A trial court may . . . comment upon the evidence as a whole or upon the testimony or credibility of any witness providing its comment is temperately and fairly made and is not argumentative or contentious to a degree which makes it characteristically an act of advocacy. Its comment is not confined to a colorless recital, by way of summing up the facts. Such a conclusion would destroy and render ineffectual the very purpose of the constitutional amendment. It is impossible to set down a hard and fast rule, each case must necessarily turn upon its own peculiar circumstances. Trial courts should, of course, be cautious in their exercise of this power with a view to protecting the rights of defendants. An examination of the Federal cases on the subject indicates that while the trial court may not direct a verdict of guilty, either directly or indirectly, it may analyze the evidence and comment and express its views with regard to the testimony of the witnesses, leaving the ultimate determination of the issues of fact fairly to the jury." (*People v. De Moss*, 4 Cal. (2d) 469 [50 Pac. (2d) 1031].)

 While in the case before us the trial court admonished the jury it was their duty to judge the credibility of the witnesses and arrive at a verdict for themselves and that his comment was but advisory, we are of the view that the quoted portion of the charge went far beyond the province of the court in such matters and passed the limitation that such comments shall not invade the province of the jury. No fixed rule or formula can be laid down, and, particularly under the present law, the comment is not confined to a colorless recital merely by summing up of the facts. The effect of the constitutional amendment has but recently had the consideration of this court in two cases, each involving the infliction of the death penalty. (*People v. Ottey, supra,* and *People v.*

*Gosden,* 6 Cal. (2d) 14 [56 Pac. (2d) 211].) The whole question was reviewed in those cases, and we deem it unnecessary to so soon again review the matter. Suffice it to say that in each case a critical analysis of the comment made by the trial judge was made and we were unable to decide that the comment amounted to an invasion of the province of the jury. We cannot reach a similar conclusion in this case.

The comment of the trial court was not that of an impartial judge. In his opinion there was but one verdict the jury could render—a verdict of guilty of murder, the penalty for which the jury in its discretion, as provided by the statute, might fix. Such is the express language the trial court used. The beneficent provision of section 4½ of article VI of the Constitution which provides that no judgment shall be set aside on the ground (among other grounds) of misdirection of the jury cannot be invoked in such a case as this. We are convinced the jury would have brought in no other verdict than that the defendant was guilty of murder. The evidence of the facts admitted of no other verdict. The jury undoubtedly would have found the defendant guilty of murder had not the comments been made by the trial court. Under its discretion (Pen. Code, sec. 190) would it have pronounced the death penalty? Who knows? Who can tell? May not the severe castigation and bitter denunciation of the defendant by the trial court have contributed to that result? It is possible, and in our view probable that it did.

The judgment is reversed and the defendant is remanded for a new trial.

Edmonds, J., Shenk, J., Curtis, J., and Langdon, J., concurred.

SEAWELL, J., Dissenting.—We dissent. The murder, as shown in this case, was committed in a cold-blooded and brutal manner, and the defendant in the perpetration of the crime exhibited a firm determination to take life. The evidence is conclusive to the effect that the defendant fired three shots into the body of the deceased, and, after he had fallen to the floor, he beat him on the head with the butt end of his revolver. There is no semblance of justification of self-defense shown by the evidence, and no circumstance of mitigation can be offered on behalf of the defendant.

544

While we do not approve all that the trial court said in his review of the evidence, especially the reference made by the court to the defendant, we are satisfied that the jury acting upon the practically uncontradicted evidence could not have done otherwise than to have rendered the verdict it returned.

Article VI, section 4½ of the Constitution, provides that no judgment shall be set aside or new trial granted on the ground of misdirection of the jury, or for any error as to any matter of procedure, unless after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.

Under the constitutional provision, as now written, we must be able to say affirmatively that the error complained of resulted in a miscarriage of justice. This we think cannot be said upon an examination of the entire cause. It will be noted that the court informed the jury that the responsibility in fixing the punishment was a matter entirely within its discretion.

Nourse, J., *pro tem.*, concurred.

Rehearing denied.

Seawell, J., and Nourse, J., *pro tem.*, voted for a rehearing.