[Crim. No. 11617.    Second Dist., Div. Two.    Aug. 22, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM IVY, Defendant and Appellant.

William Ivy, in pro. per., and Gilbert F. Nelson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip M. Rosten, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was convicted by a jury of violating section 11531 of the Health and Safety Code (selling marijuana). The sole question on appeal is the propriety of certain comments made by the judge to the jury during the course of their deliberation.

The issues which apparently inspired the comments on the evidence made to the jury by the judge, were in respect of identification of appellant and his defense of alibi. We therefore adopt the summary of the criminal transaction as set forth in appellant's brief:

"A narcotics officer of the Long Beach Police Department testified that he had been on the narcotics detail in Long Beach for 3 years. He stated that on February 21, 1965, he was in the company of an informant when he was introduced to appellant. The introduction took place in a bar in Long Beach. The informant told appellant that the officer, who was in plain clothes, was 'all right' and that he had 'done time'. The officer said that that was right, and in the language of the drug trade the officer said that he had served 3 years and 8 months at Terminal Island Prison. Appellant then said 'Okay, let's go', and they walked out of the bar, and at the appellant's direction went into another place known as 'Shakey's', and into the rest-room where they waited a couple of minutes. They then went out of the place and met appellant outside. Appellant handed the officer three hand-rolled cigarettes, and

the officer gave appellant a ten dollar bill which appellant then had changed at a store; then from the change the officer paid appellant $2.00 for the cigarettes. It was stipulated that the cigarettes contained marijuana. The sale took place at 9:45 P.M.

"The officer testified that appellant was wearing a pair of bib-type gray and white striped overalls, a gray felt hat with black band, and polished black shoes. The officer did state that he had described the appellant as wearing a black turtle-neck sweater at the preliminary examination. The officer explained that he had been testifying about the informant just prior to this testimony at the preliminary."

The officer referred to in the foregoing summary was Arthur Koelle. He made clear at the preliminary hearing that the description he had given was intended as a description of the informant and reiterated he was absolutely certain appellant was the person who sold him the marijuana, and he described appellant as wearing a pair of bib-type gray and white overalls, a gray felt hat with black band, and polished black shoes.

Appellant testified that he, his wife and another couple, Mr. and Mrs. Le Blanc, had been playing cards from 6:30 to 10 on the evening in question. The game was arranged as a celebration of his wife's birthday, which had occurred a few days earlier. At 10 p.m., the game broke up because appellant wanted to watch a particular television program. Appellant's testimony was corroborated almost identically by his wife and the other couple. Appellant's mother, who had dropped by appellant's apartment between 8 and 8:30, also corroborated his story.

All of the witnesses stated that they had talked to no one about the case prior to trial. Mr. and Mrs. Le Blanc also testified that they had not talked about the case between themselves.

The defense witnesses further testified that although appellant often dressed in gray and white overalls, he never wore a hat, and wore only high topped shoes. Appellant testified that he had to wear special high topped shoes because he had bad arches.

The jury retired for deliberation at 2:50 p.m. on the last day of trial. The jurors were unable to reach a verdict and were locked up for the night. The next morning, they returned to court and requested that Koelle's testimony be read. The court complied, and the jury indicated that no further testimony was needed. ▮ The trial judge, apparently aware

of the jury's difficulty in reaching a verdict, offered his assistance by commenting on the evidence, stating: "Of course, you don't have to pay any attention to it if I do comment on it."

One of the jurors then asked the judge if he would so comment, and the judge complied as follows: "The Constitution of the State of California provides: 'The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses.'

"I am about to exercise the power thus granted me by the Constitution. Before doing so, however, I caution you that it is your right and duty to exercise the same independence of judgment in weighing my comments on the evidence as you are entitled to exercise in weighing the testimony of the witnesses and the arguments of counsel. Notwithstanding my comments on the evidence, you will keep in mind that you are the exclusive judges of all questions of fact submitted to you and of the credibility of witnesses. Such authority as I have to comment on the evidence is confined to the sole purpose of aiding you in arriving at a verdict. My comments on the evidence are not intended to impose my will upon you or to compel you to render any particular verdict. You have the right to disregard my comments on the evidence if, in your sole judgment, you so desire.

". . . . . . . . . . . .

"Really, the basic question is whether or not he [the officer] bought that from the Defendant. The officer positively identified the defendant as the person from whom he bought it. The defense is alibi. Obviously, if the Defendant was in his apartment playing cards, as he says he was, he couldn't possibly have bought this marijuana from the officer. And if you believe from the evidence that he was playing cards at the time this occurrence happened, why, it is your duty to acquit him.

". . . . . . . . . . . .

"Now, the question is should you or should you not believe that evidence of alibi? And there are some very interesting things about it that impress me.

"All four of these witnesses—other than the Defendant, of course—have some interest in it. . . . They all testify to the

same thing in rather replete detail. Their testimony on the subject of the card game and that sort of thing, one is almost a carbon copy of the other, as I see it. And, yet, they all deny that they ever talked to anybody about it until very recently. As to the witnesses Le Blanc, husband and wife, living in the same house, same apartment, they never talked among themselves about it. They didn't even talk about it among themselves when they were served with subpoenas to appear in court. . . .

"Well, of course, when you go into the jury room you are entitled to take your common sense along with you and you are entitled to judge witnesses and evidence in the light of what some people call the law of probability. Does the evidence, that is does it square with the common facts of life . . . ?

". . . . . . . . . . . . . .

"And there is no serious conflict—there is no serious conflict on the subject of identification. No one has ever come up with any testimony that this officer ever had any doubt as to his identification of this man. And when you consider that that was his job to do that very thing, to know who he was buying it from, that is what he was paid to do—and a man of experience—we had better hire some new police officers if they are not trained in carefully identifying people, regardless of what their race or color may be. And I don't recall any evidence of any question as to identification of this man. There is some talk about a pair of shoes, but I don't see that that makes very much difference.

"Well, anyway, ladies and gentlemen, as I told you, under the Constitution I have the right to comment on evidence, and you have the same right to completely disregard everything I have said; that is, on this commenting on evidence. You are, of course, bound to follow the law as I gave it to you, but you are at complete liberty to disregard any comments I have made on the facts. That is your responsibility. If I can help, I am glad to."

The court's comments are quoted at length to convey a complete picture. With the exception of the phrase "weighing my comments on the evidence as you . . .[weigh] the testimony of witnesses . . ." taken out of context, the trial judge was well within the purview of fair comment. It is clear, however, from the full statement, that the trial judge made no attempt to suggest to the jury, that anything he said was testimony. There is no charge that the judge in any way misled the jury. We are satisfied that he did not.

Section 19 of article VI of the California Constitution allows a judge to comment on the evidence, including the credibility of any witness. In *People* v. *Friend,* 50 Cal.2d 570 [327 P.2d 97], it is noted that the power granted by this provision makes the judge "a real factor in the administration of justice, rather than a mere referee . . . and that he is no longer confined to a colorless recital of the evidence but may analyze the testimony and express his views with respect to its credibility." (*People* v. *Friend, supra,* at p. 577.) The court continues: "A judge's power to comment on the evidence, of course, is not unlimited. [Citations]. He may not withdraw material evidence from the jury's consideration or distort the testimony, and his comments should be temperately and fairly made, rather than being argumentative or contentious to a degree amounting to partisan advocacy. The jury, as required by the constitutional provision, must remain as the exclusive arbiter of questions of fact and the credibility of witnesses, and the judge should make clear that his views are not binding but advisory only.

"The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. [Citations].

"It is also settled that a judge may restrict his comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony, both favorable and unfavorable. [Citations]." (*People* v. *Friend, supra,* at pp. 577-578.) (See recent reaffirmations of these rules in *People* v. *Farnum,* 242 Cal.App.2d 310, 313 [51 Cal.Rptr. 327]; *People* v. *Welborn,* 242 Cal.App.2d 668, 674-675 [51 Cal.Rptr. 644].)

Appellant argues that in three instances, the trial judge exceeded his constitutional powers. First he refers to the court's comment that "There is no conflict on the subject of identification"; secondly, he objects to the court stating "There is some talk about a pair of shoes, but I don't see that that makes very much difference"; and thirdly, he criticizes the comment that the officer was specially trained in identifying people. Taken as a whole, he contends, these statements distort the evidence and remove a crucial issue from the jury.

We do not agree. Appellant's summary of the criminal transaction which we have set forth verbatim, shows that

Officer Koelle had ample opportunity to see and absorb every facet of appellant's physical appearance and the manner in which he was dressed and so to make a positive identification. In fact it would have been strange and he would have subjected himself to suspicion for some type of irregularity, if he could not, on the admitted record, have made a positive identification. In making the foregoing comments the court did nothing more than draw reasonable inferences from the evidence relative to the credibility of the various witnesses. In context, his statement that there was no conflict on the subject of identification was not intended to remove that issue from the inquiry of the jury. Indeed, it was quite obvious that that was the only real issue in the case. The comment was made only to indicate to the jury that Officer Koelle's identification of appellant as the seller of the marijuana had not been shaken. The officer had repeatedly testified that he was positive appellant was the proper person.

In addition, the court pointed out that the minor differences concerning the type of shoes appellant usually wore (and presumably the problem of the missing hat) were not significant enough to inject doubt into the officer's identification. Such comment was a fair interpretation of the evidence as it was presented to the jury.

Finally, the court's imputation of expertise in identification to the police officer, was nothing more than a recital of the commonly known fact that police officers are constantly responsible for properly identifying people, and may develop finer sensitivities than laymen in this area.

It is to be noted that the court repeatedly stressed the independence of the jury in deciding all such matters for itself. At no time did the court impose its will on the jury, but, on the contrary, emphasized to them that they could disregard everything he said, if they were of a different mind.

We think the conduct of the judge was proper in all respects, and that his comments to the jury were well within the limits of his constitutional authority.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 19, 1966.