[Crim. No. 10694. In Bank. May 5, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SAM BROCK, Defendant and Appellant.

James T. Fousekis, under appointment by the Supreme Court, for Defendant and Appellant.

Philip L. Grauman as Amicus Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Edward P. O'Brien, Frank C. Damrell and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—A jury found defendant guilty of two charges of burglary in the second degree (Pen. Code, §§ 459, 460) and he admitted three prior felony convictions. This appeal is from the ensuing judgment.

On May 29, 1965, about 12:20 p.m., a car belonging to Bernard Krause was burglarized while parked at 1255 Market Street in San Francisco. A brief case belonging to Stanley Karatz was taken from the car.

Sometime between noon on Sunday, May 30, 1965, and 8 a.m. the following day the property clerk's office at the Hall of Justice in San Francisco was burglarized. On the door were marks similar to those made by a jimmy and the bolt was sawed off. The doors leading to the office had been washed three or four days earlier with a cleanser, and the washing was of such a nature that it removed all fingerprints. Defendant's finger and palm prints were found on the doors. Part of a broken hacksaw blade was also found by the police.

At 1:15 a.m. on June 2, 1965, Officer DeBrunn observed defendant and another man walking down Sixth Street toward the Hall of Justice. As he was walking defendant was moving his head from left to right. There were a number of automobiles parked on the street. On a prior occasion, the officer had arrested defendant upon seeing him smash a car window with a brick. The charge was dismissed after the automobile owner, an out-of-state student, was unable to appear in court. The officer was aware that there had been a large number of automobile burglaries in the general area and that defendant had been arrested twice when observed removing large quantities of clothing from motels. He had stopped defendant numerous times in the same area and, without excep-

tion, had found a "screwdriver or a piece of wire, some tool on him."

The officer, who was in a marked police car, called to defendant and asked if he could talk to him. After defendant came over to the car, the officer asked defendant where he was going and where he was now living. Defendant said he lived with his companion, that he was going home, that he had just moved there, and that he did not know the address. The companion said he lived at 111 Mason Street.

When the officer said to defendant, "Sam, you're going in the wrong direction," defendant replied, "I lied to you, . . . I'm going to see a couple of girls." He stated that he did not know where the girls lived but would "have to look for it."

After the officer asked defendant what the latter had in a paper bag he was holding, defendant dropped the bag and said, "What bag?" As the bag hit the pavement there was a "clank," and the officer saw a pry bar protruding from it. At this point the officer warned defendant that he did not have to answer any questions, that anything defendant said could be used against him, and that he had a right to an attorney.

The officer picked up the bag and found a hacksaw, a file, and the pry bar, tools which are commonly used in burglaries. In response to questions defendant said that he used the tools when working on automobiles, that he had recently obtained the job, and that he did not know the name of his employer. The officer arrested defendant and took him to the police station.

On June 2, 1965, a police officer, who had learned that the fingerprints on the property clerk's door were defendant's, called the Grand Central Hotel where defendant had a room paid for through June 3d. The landlady refused the officer admittance to the room, and the officer told her that no one was to enter defendant's room.[1] Defendant had rented the room on May 27 for a week, and after his tenancy expired the officer asked the landlady on June 4 if he might now search the room. The landlady consented to the officer's entry into the room. Inside the room the officer found a hacksaw holder,

---

[1]Defendant testified that he intended to pay the next week's rent, that he telephoned the landlady telling her that he was in jail, that he would be unable to pay his rent, and that she should not permit persons to touch his belongings unless they had a signed note from him. The landlady testified, however, that she did not speak to defendant after the day he rented the room. She was not specifically asked about the claimed telephone call.

a number of suitcases, and the briefcase taken from the Krause car. He opened the closed suitcases, and, in two of them he found the names of Krause and Karatz. A pry bar, shown by expert testimony to have been used in the burglary of the property clerk's office, was also found in a suitcase. It does not appear whether the landlady consented to the inspection of the suitcases.

On July 7, 1965, an information was filed charging defendant with the burglary at the Hall of Justice, and a trial on this charge resulted in a hung jury in August of 1965. Thereafter, on motion of the district attorney, this charge was consolidated for trial with an information filed on July 12 charging burglary of the automobile. It is from the judgment of conviction entered in that trial that this appeal is taken.

The defendant first challenges certain instructions given by the trial judge. In instruction No. 20 of the 23 instructions the trial judge stated: "By the Constitution of this State a judge of this court presiding in a trial of an action is authorized within proper bounds to comment on the evidence and the testimony and credibility of any witness. *It is the opinion of this Court, based on the evidence, that the guilt of the defendant Sam Brock as to both of the offenses here charged, has been established beyond a reasonable doubt.* I would caution you, however, that it is your right and your duty to exercise the *same independence of judgment in weighing my comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses* and the arguments of counsel. You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as the Trial Judge has to express his personal thought on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict and may not be used, and it is not used in this case, to impose his will upon you or to compel a verdict." (Italics added.)

These instructions amounted to a directed verdict, and the giving of them was error.

Section 7 of article 1 of the California Constitution provides that the "right of trial by jury shall be secured to all, and remain inviolate; . . ."

Section 19 of article VI of the California Constitution as amended in 1934 provided: "The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and

credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."[2] Prior to 1934, the section stated: "Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

The 1934 amendment obviously made a fundamental change as to the right of a trial judge to comment. The purpose of the amendment was to place in the trial judge's hands more power in the trial of jury cases "and make him a real factor in the administration of justice in such cases, instead of being in the position of a mere referee or automaton as to the ascertainment of the facts." By reason of his training in analyzing testimony, and experience in determining the credibility of witnesses, a trial judge is in a position to assist the jurors in determining what evidence has a bearing on the disputed issues in the case and to aid them in weighing the evidence, and comments which will so assist the jury are of substantial value and should not be discouraged. (*People* v. *Ottey,* 5 Cal.2d 714, 722-726 [56 P.2d 193].)

A judge's power to comment on the evidence, however, is not unlimited. (*People* v. *Dail,* 22 Cal.2d 642, 658 [140 P.2d 838] ; *People* v. *Patubo,* 9 Cal.2d 537, 543 [71 P.2d 270, 113 A.L.R. 1303] ; *People* v. *Ottey, supra,* 5 Cal.2d 714, 724.)

In commenting on the evidence the judge may not withdraw material evidence from the jury's consideration or distort the testimony. (See *People* v. *Scott,* 53 Cal.2d 558, 564 [2 Cal.Rptr. 274, 348 P.2d 882] (overruled on other grounds, *People* v. *Morse,* 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33]) ; *People* v. *Friend,* 50 Cal.2d 570, 577 [327 P.2d 97].) Although a judge is not required to comment on all of the evidence, he should be cautious in exercising the comment power with a view to protecting the rights of the defendant (*People* v. *De Moss,* 4 Cal.2d 469, 477 [50 P.2d 1031]), and it is error where in the guise of commenting on the evidence the judge makes statements which contain an erroneous view of the applicable law. (*People* v. *Dair, supra,* 22 Cal.2d 642, 656-659.)

The judge may not in the guise of comment control the verdicts by a direction either directly or impliedly made. (*United Brotherhood of Carpenters & Joiners* v. *United*

[2]This provision was repealed subsequent to the trial of the case, and a provision permitting comment is now found in section 10 of article VI.

*States,* 330 U.S. 395, 408 [91 L.Ed. 973, 985, 67 S.Ct. 775];
*United States* v. *Murdock,* 290 U.S. 389, 393-394 [78 L.Ed.
381, 384-385, 54 S.Ct. 223]; see *People* v. *Dail, supra,* 22 Cal.
2d 642, 658; *People* v. *Ottey, supra,* 5 Cal.2d 714, 729; *People*
v. *De Moss, supra,* 4 Cal.2d 469, 477.)

The federal courts have held that it is improper for a trial
judge to state that he believes the defendant guilty, unless the
undisputed evidence establishes guilt. (*United States* v. *Mur-
dock, supra,* 290 U.S. 389, 393-394 [78 L.Ed. 381, 384-385, 54
S.Ct. 223]; *United States* v. *Woods,* 252 F.2d 334, 336 (and
cases cited).) And it has been stated that the power to com-
ment does not give the trial judge the right to determine in
his own mind the facts upon which guilt or innocence depends
and to make it clear to the jury that he is convinced of the
defendant's guilt. (*People* v. *Farnum,* 242 Cal.App..2d 310,
315 [51 Cal.Rptr. 327].)

■ It is clear from the language of our Constitution that
the comments authorized are those which in the court's opin-
ion are "necessary for the proper determination of the case."
In our system of a jury trial, the judge instructs the jury
that in determining the question of guilt or innocence a num-
ber of preliminary determinations must be made. The judge
sets forth what preliminary determinations must be made, and
also gives the jurors a number of instructions to aid them in
making such determinations.

The vice of a general comment on guilt without discussion
of the evidence is that it does not aid the jury in applying the
instructions on the law to the evidence in the case but to the
contrary provides for the jury a means to avoid the prelim-
inary determinations called for by the instructions on the law
and instead to rely on the words of the judge in returning a
conviction. This is not the kind of comment contemplated by
the constitutional provision. Rather than aiding the jury in
properly considering the case, such a comment may prevent it
from doing so.

By requiring the court to inform the jurors that they are
the exclusive judges of all questions of fact submitted to
them, the constitutional provision makes it abundantly clear
that the purpose of the provision was not to create a means by
which the jurors could avoid the responsibility of determining
the facts and, under proper instructions on the law, the ulti-
mate question of guilt. Yet, a general comment on the issue of
guilt without discussion of the evidentiary basis for the com-
ment may lead the jurors to abdicate their awesome responsi-

bility in favor of accepting the judge's comment without determining the questions submitted to them under the instructions.

Moreover, the comment before us suggests that if the jury sees fit the case may be decided on the basis of the judge's comment without regard to the evidence in the case. The judge told the jury it had the "right" and "duty to exercise the same independence of judgment in weighing my comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses . . . ." Apparently, the judge intended to advise the jury that it could reject his views, but the language used unfortunately also conveys the idea that his comment is on a par with the testimony and subject to the same independence of judgment in determining the case. The danger that the jury may have viewed the comment in the latter sense may not be minimized. The jury is ordinarily aware that the judge has participated in numerous trials and dealt with the attorneys in the past and that numerous matters regarding the case have taken place in the presence of the judge but outside the presence of the jury. In these circumstances there is a great danger that a jury which may wish to escape its responsibility to determine the facts will give weight to the comment of the judge without considering the evidence and the instructions.

The Attorney General relies upon the following statement from *People* v. *Friend, supra,* 50 Cal.2d 570, 578; "The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. *People* v. *Rupp,* 41 Cal.2d 371, 383 [260 P.2d 1]; *People* v. *Daugherty,* 40 Cal.2d 876, 893 [256 P.2d 911]; *People* v. *Dail,* 22 Cal.2d 642, 658-659 [140 P.2d 828]; *People* v. *Warren,* 16 Cal.2d 103, 114 [104 P.2d 1024]; *People* v. *Eudy,* 12 Cal.2d 41, 47 [82 P.2d 359]; *People* v. *Ottey,* 5 Cal.2d 714, 729 [56 P.2d 193]; *People* v. *Yokum,* 145 Cal.App.2d 245, 258 [302 P.2d 406]; *People* v. *Huff,* 134 Cal.App.2d 182, 187 [285 P.2d 17]; *Pomerantz* v. *Bryan Motors, Inc.,* 92 Cal.App.2d 114, 119 [206 P.2d 440]; *People* v. *Busby,* 40 Cal.App.2d 193, 202 [104 P.2d 531].)"

So far as appears from the reports of the cases, neither *Friend* nor any of the cases there cited upheld a comment by the trial judge that a defendant was guilty beyond a reason-

able doubt where the comment was made prior to rendition of a jury verdict, where there was a conflict in the evidence, and where the evidentiary basis for the comment was not explained to the jury. In *People* v. *Rupp*, 41 Cal.2d 371, 383 [260 P.2d 1], *People* v. *Daugherty*, 40 Cal.2d 876, 893 [256 P.2d 911], and *People* v. *Busby*, 40 Cal.App.2d 193, 202 [104 P.2d 531], the comment complained of was a statement, made after the guilt trial and prior to the sanity trial, congratulating the jury on its verdict in the guilt trial, and the statement of the judge did not determine the sanity issue. In *People* v. *Dail, supra*, 22 Cal.2d 642, 656-659, the conviction was reversed because in part the comment of the trial court applied an erroneous standard of proof. *People* v. *Warren*, 16 Cal.2d 103, 113-114 [104 P.2d 1024], involved a comment of the judge on double jeopardy as to which defense this court held that it was proper for the trial court to direct a verdict for the prosecution because the question was one of law, not of fact. The comment in *People* v. *Eudy*, 12 Cal.2d 41, 46-47 [82 P.2d 359], was merely that "an ingenious counterfeit of mental infirmity should never furnish immunity to guilt" and did not go so far as to assert that the defendant was falsely claiming insanity. The comment in *People* v. *Ottey, supra*, 5 Cal.2d 714, 727 et seq., singled out the defendant's testimony, cast doubt upon it for reasons expressed in the comment, and concluded that the jury had the right to conclude that the testimony was false. The court expressly pointed out that the trial judge did not say that "the jury 'must' or 'should' conclude that the statements were not to be believed; but left the ultimate decision with the jury by stating that it had the 'right' to so conclude." (5 Cal.2d at p. 727.)

The appellate court decisions cited in *Friend* for the right to comment on guilt or innocence also factually do not support the right to make the comment made in the instant case. In *People* v. *Huff*, 134 Cal.App.2d 182, 185 et seq. [285 P.2d 17], the conviction was reversed because the trial judge's comments were argumentative. *Pomerantz* v. *Bryan Motors, Inc.*, 92 Cal.App.2d 114, 119 [206 P.2d 440], was a civil case, and the matter complained of was a comment that one of two witnesses who gave conflicting testimony was guilty of perjury without indicating which was the guilty party. In *People* v. *Yokum*, 145 Cal.App.2d 245, 256-258 [302 P.2d 406], the court commented at length on the evidence relating to the defense of self-defense and concluded that upon his evaluation of the evidence discussed the defendant was not in im-

minent danger of suffering great bodily injury when she shot her husband, that she did not have a reasonable belief of such danger, and that therefore the shooting was not in self-defense. The court's comment did not merely state that the defendant was guilty but explained the reasons for the conclusion that the killing was not in self-defense in such a manner that, if the jury disagreed with his analysis of the evidence or the inference to be drawn from it, the jury could reject the judge's view.

In *Friend*, which involved a penalty trial, the court's comments were tied closely to specific evidence in the case, pointing up certain factual matters, some of which were favorable to the prosecution and others favorable to the defense, and the trial judge did not tell the jury that it should impose the death penalty.

In one of the cases decided after *Friend*, the trial judge had stated that it appeared that the defendants committed either robbery or grand theft. This was approved but this was done in a case where the testimony of the defendants themselves admitted commission of a theft, disputing only robbery. (*People* v. *Williams*, 235 Cal.App.2d 389, 402-403 [45 Cal. Rptr. 427].) In the circumstances presented the judge's comment was not unfavorable to the defendant, and the comment made was in accordance with the federal rule discussed above. Other cases decided after *Friend* did not involve a general comment that the defendant was guilty, although some of the opinions quoted the language from *Friend* set forth above. In such cases the trial judge merely discussed and analyzed the evidence. ( *People* v. *Ivy*, 244 Cal.App.2d 406, 411-412 [53 Cal.Rptr. 47] ; *People* v. *Welborn*, 242 Cal.App.2d 668, 674-677 [51 Cal.Rptr. 644] ; *People* v. *Farnum, supra,* 242 Cal. App.2d 310, 312-315; *People* v. *Schwenkner,* 191 Cal.App.2d 46, 52 et seq. [12 Cal.Rptr. 408].)

So far as appears, no California case has upheld a trial judge's comment like the one involved here. The federal courts, as we have seen, have refused to permit a general comment except where the evidence is undisputed. The comment does not help the jury to perform the duties given to it by the instructions. The harmful effects of such a comment are obvious, and we are satisfied that the constitutional provision was not intended to permit such comments. The statement in *Friend* and the other cases that a judge "may express his opinion as to the guilt or innocence of the defendant" should be understood as meaning that proper comments of the

judge as to evidence are not erroneous merely because the jury might conceivably understand such comments as reflecting his opinion as to guilt or innocence, and the quoted language should not be understood as warranting general statements as to guilt or innocence where the evidentiary basis for the comment is not explained to the jury.

█ The erroneous comment of the trial court requires reversal of the judgment. As to the conviction of burglary of the automobile, the record shows only possession of stolen goods a few days after the burglary without satisfactory explanation. (Cf. *People* v. *McFarland,* 58 Cal.2d 748, 754-760 [26 Cal.Rptr. 473, 376 P.2d 449].) The first trial as to the burglary at the Hall of Justice resulted in a hung jury. As to neither charge is the evidence overwhelming, and in view of the highly prejudicial nature of the court's comment, we are satisfied that the comments constituted prejudicial error. (Cal. Const., art. VI, § 13.█)

█ Defendant also urges that the motion by the prosecution to consolidate the cases for trial after there had been a hung jury in one of the cases was an attempt to prejudice his defense in such case and that the court erred in granting the motion. Section 954 of the Penal Code provides that an accusatory pleading may charge "two or more different offenses of the same class of crimes or offenses, under separate counts," and that "if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts . . . be tried separately. . . ."

Joinder of related charges, whether in a single accusatory pleading or by consolidation of several accusatory pleadings, ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts were to be tried in two or more separate trials (cf. *Kellett* v. *Superior Court,* 63 Cal.2d 822, 825-827 [48 Cal. Rptr. 366, 409 P.2d 206]), and in several respects separate trials would result in the same factual issues being presented in both trials. The search of defendant's room produced evidence relating to each of the charged burglaries, and the circumstances of that search were of substantial importance in a trial relating to either of the charges.

It has been held that the fact that the evidence of the prosecution may be strong as to one of two offenses of the same class charged in a single information and weak as to the other does not deny the trial court discretion to refuse severance. (*People* v. *Gryszkiewicz,* 88 Cal.App.2d 230, 233-234 [198 P.2d 585] ; cf. *People* v. *Kelly,* 203 Cal. 128, 133-135 [263 P. 226].) Even assuming that the evidence was strong as to one offense and weak as to the other in the instant case, the trial court had discretion to order consolidation.

Defendant claims that the search of the hotel room and its contents was unlawful. The evidence as to this issue is in some respects conflicting, and it may be that on the retrial there will be further evidence as to the scope of the landlady's consent. Under the circumstances, it is not appropriate for us to attempt to guide the trial court, for purposes of a retrial, on this matter.

The judgment is reversed.

Traynor, C. J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent, I would affirm the judgment for the reasons expressed by Mr. Justice Agee in the opinion prepared by him for the Court of Appeal, which opinion reads, as follows:

In action 65627 defendant was charged by information with burglary (Pen. Code, § 459), in that on or about May 31, 1965, he entered the Hall of Justice in San Francisco with the intent to commit theft therein. Three prior felony convictions were charged by an amendment to this information. These were admitted by defendant before trial.

In action 65648 defendant was charged by information with burglary, in that on or about May 29, 1965, in San Francisco, he entered the automobile of Stanley Karatz, when the doors thereof were locked, with the intent to commit theft.

In a jury trial concluded on September 8, 1965, defendant was convicted of second degree burglary in both actions.

The first point raised by defendant on appeal is that material evidence against him was obtained by an unlawful arrest.

### Legality of Arrest

On June 2, 1965, about 1 :15 a.m., Officer De Brunn of the San Francisco Police Department saw defendant-appellant and another man walking down Sixth Street near Howard Street, in San Francisco.

The officer knew appellant and was aware that he had been arrested on two occasions by fellow officers when he was observed carrying large quantities of clothing out of motel parking areas.[1] The officer had himself on numerous occasions stopped appellant as he was coming out of alleys in this same area and, without exception, had always found a "screwdriver or a piece of wire, some tool on him."

In fact, the officer had on a prior occasion chased and arrested appellant upon seeing him smash a car window with a brick. On that occasion, the appellant was wearing black stockings over both hands and had a screwdriver and coathanger on his person. The officer testified that these are implements customarily used in gaining entrance to automobiles when the windows are rolled up and the doors locked.

At the time in question automobiles were, as usual, parked on Sixth Street for the night. The officer testified that there had been a large number of auto burglaries in this district and that appellant, as he was walking along, was moving his head from side to side and looking around.

The officer was in a marked patrol car. He called to appellant by name and asked if he could talk to him. Appellant came over to the car. The officer asked him what he was doing and where he was now living. Appellant replied that he lived with "my friend," pointing to the man with him, and that he was going home. Appellant said that he had just moved there and did not know the address. The friend said he lived at 111 Mason Street.

The officer thereupon said to appellant, "Sam, you're going in the wrong direction." Appellant replied, "I lied to you, . . . I'm going to see a couple of girls." He stated that he did not know where the girls lived but would "have to look for it."

The officer then asked appellant what he had in the paper bag he was holding. Appellant dropped the bag and said, "What bag?" When the bag hit the pavement there was a "clank" and it fell over. The officer then saw about three inches of a pry bar protruding out of the end of the bag.

At this point the officer warned appellant that he did not have to answer any questions, that anything he said could be

---

[1] All of the testimony as to the officer's knowledge of appellant's "past" was elicited out of the presence of the jury and was limited to the issue of whether the officer had reasonable and probable cause to arrest the appellant.

used against him, and that he had the right to an attorney. (No "Dorado"[2] question has been raised by appellant.)

The officer picked up the bag and found inside a hacksaw, a file, and the pry bar.[3] Appellant stated that they were his and that he used them on his job. When asked where he worked, appellant replied that it was automobile work but that he had just gotten the job and "I don't know the name."

The officer thereupon arrested appellant for illegal possession of burglar's tools. (Pen. Code, § 466.) The tools were admitted in evidence over appellant's objection that they were the product of an illegal arrest.

Penal Code section 466 provides in pertinent part as follows: "Every person having upon him or in his possession a picklock, crow, keybit, or other instrument or tool with intent feloniously to break or enter into any building . . . is guilty of misdemeanor." "Building" as used in section 466 includes a motor vehicle. (Pen. Code, § 459.)

Penal Code section 836 provides in pertinent part that "A peace officer may . . . without a warrant, arrest a person; 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence."

The undisputed evidence is that the tools which appellant had in his possession (*in the presence* of the arresting officer) were commonly used as "burglar's tools." However, there is no violation of section 466 unless the possessor of such tools *intended* to use them in the manner described in that section.

It is now well settled in California that a peace officer may make a lawful arrest without a warrant when circumstances exist that would cause a reasonable person to believe that a misdemeanor has been committed in his presence. (*Coverstone* v. *Davies*, 38 Cal.2d 315, 320 [239 P.2d 876].)

As stated in *Farnsworth* v. *Cote*, 199 Cal.App.2d 762, 767 [19 Cal.Rptr. 45], the decisive factor is whether "[a] reasonable person confronted by the scene which the officers viewed . . . could have an honest and strong suspicion of appellant's guilt of a violation of [a designated misdemeanor]."

Moreover, as stated in *People* v. *Garrison*, 189 Cal.App.2d 549, 557 [11 Cal.Rptr. 398], "The question of reasonable and probable cause must be measured by the facts presented to the officer at the time he is required to act." In determining such question, an officer is justified in taking into account the past conduct, character and reputation of the person sus-

---

[2]*People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

[3]Another officer testified that such tools were commonly used in burglaries.

pected. (*People* v. *Wickliff,* 144 Cal.App.2d 207, 212 [300 P.2d 749].)

Under the circumstances of this case, as related above, we are of the opinion that Officer De Brunn had reasonable and probable cause to believe that appellant had *the intent to use* the tools in his possession for the commission of a burglary.

We are further of the opinion that the prosecution need not establish that such intent was directed to a *specific* building or motor vehicle. (See out-of-state cases interpreting similar statutes, cited in footnote 80 of 12 C.J.S., Burglary, § 69, and 1966 Cumulative Annual Pocket Part.) There are no California cases which discuss this point.

Having determined that the arrest was lawful, we hold that the seizure of the tools being carried by appellant was reasonably incident to such arrest.

### Legality of Search of Hotel Room

On May 27, 1965, appellant had rented a room in a hotel for one week. On June 4, the day following the expiration of appellant's tenancy, the police entered this room after first obtaining the hotel manager's consent to do so. No search warrant had been obtained. Certain articles, including a brief-case and a 2-foot pry bar found in a suitcase belonging to appellant were seized and later admitted in evidence at the trial.

The specific purpose of the police in searching the room was to look for the other half of a broken hacksaw blade found at the scene of the Hall of Justice burglary.

The prosecution concedes that a landlord or hotel manager cannot give consent to a search of rooms during the tenancy of the occupant. (*Stoner* v. *California,* 376 U.S. 483 [11 L.Ed. 2d 856, 84 S.Ct. 889]; *People* v. *Cruz,* 61 Cal.2d 861 [40 Cal.Rptr. 841, 395 P.2d 889].) However, it relies upon the fact that appellant's right to occupy the room had expired. In other words, it was no longer "appellant's room."

In *People* v. *Van Eyk,* 56 Cal.2d 471, 478 [15 Cal.Rptr. 150, 364 P.2d 326], the court stated: "The record is sufficient to show that the hotel room in which the narcotics were found on September 15 was no longer defendant's room. He rented it on September 13, paying for one day only . . . . Defendant's tenancy could be found to have expired before the search was made, and the manager of the hotel was entitled to permit the police to enter and search the room."

We hold that, in the instant case, the hotel manager had the

right on June 4, 1965, to consent to the entry and search of the room by the police.

## Consolidation of Actions for Trial

Action 65627 was tried alone and ended on August 19, 1965 in a jury disagreement. On August 25, 1965, the prosecution moved to consolidate this action with action 65648 for trial. In response to the court's inquiry, appellant's counsel stated that he had "no argument to present on the matter." The court thereupon ordered the consolidation under the power given to it under Penal Code section 954.

Such failure by appellant to object or demand separate trials waives any right to now raise the point on appeal. (*People* v. *Chessman,* 38 Cal.2d 166, 175 [238 P.2d 1001]; *People* v. *Bennett,* 119 Cal.App.2d 224, 226 [259 P.2d 476]; *People* v. *Van De Wouwer,* 91 Cal.App.2d 633, 640 [205 P.2d 693].)

Moreover, the two offenses charged are of the same class, burglary; appellant is the only defendant named in each charge; both offenses were committed in the same city approximately one day apart.

Appellant argues that the consolidation was sought by the prosecution in order to strengthen its case in the first action, the outcome of the prior trial having demonstrated the weakness of that action. Even though this speculation were to be accepted, it does not follow that the consolidation of a weak case with a strong case warrants the conclusion that the trial court abused its discretion in ordering such consolidation. (*People* v. *Gryszkiewicz,* 88 Cal.App.2d 230, 234 [198 P.2d 585].)

We find no error or abuse of discretion in the consolidation of the two actions in a single trial.

## Trial Judge's Comment on the Evidence

California Constitution article VI, section 19, as amended in 1934, provides as follows: "The court may instruct the jury regarding the law applicable to the facts of the case, and may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses."

Appellant complains of the following comment made by the trial judge to the jury: "By the Constitution of this State a

judge of this court presiding in a trial of an action is author-ized within proper bounds to comment on the evidence and the testimony and credibility of any witness. It is the opinion of this Court, based on the evidence, that the guilt of the defendant Sam Brock as to both of the offenses here charged, has been established beyond a reasonable doubt. I would cau-tion you, however, that it is your right and your duty to exercise the same independence of judgment in weighing my comment on the evidence as you are entitled to exercise in weighing the testimony of the witnesses and the arguments of counsel. You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as the Trial Judge has to express his personal thought on any of these matters is confined to the sole purpose of aiding you in arriving at a verdict and may not be used, and it is not used in this case, to impose his will upon you or to compel a verdict.''

The foregoing statement does not exceed the bounds of proper comment. As stated in *People* v. *Friend* (1958) 50 Cal.2d 570, 578 [327 P.2d 97] : ''The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. (*People* v. *Rupp,* 41 Cal.2d 371, 383 [260 P.2d 1] ; *People* v. *Daugherty,* 40 Cal.2d 876, 893 [256 P.2d 911] ; *People* v. *Dail,* 22 Cal.2d 642, 658-659 [140 P.2d 828] ; *People* v. *Warren,* 16 Cal.2d 103, 114 [104 P.2d 1024] ; *People* v. *Eudy,* 12 Cal.2d 41, 47 [82 P.2d 359] ; *People* v. *Ottey,* 5 Cal.2d 714, 729 [56 P.2d 193] ; *People* v. *Yokum,* 145 Cal.App.2d 245, 258 [302 P.2d 406] ; *People* v. *Huff,* 134 Cal. App.2d 182, 187 [285 P.2d 17] ; *Pomerantz* v. *Bryan Motors, Inc.,* 92 Cal.App.2d 114, 119 [206 P.2d 440] ; *People* v. *Busby,* 40 Cal.App.2d 193, 202 [104 P.2d 531].) ''

To the foregoing citations may be added the recent case of *People* v. *Williams* (1965) 235 Cal.App.2d 389, 402 [45 Cal. Rptr. 427].

### Sufficiency of Evidence in Action 65627

At some time between Sunday noon, May 30, 1965, and 8 a.m. on the following day, the lock on the door entering into the property clerk's office at the Hall of Justice was jimmied and the bolt attached thereto was sawed. The sufficiency of the

evidence to establish the corpus delicti of a burglary is not in dispute.

Expert testimony established that the pry bar used to jimmy the lock was the same as that found in appellant's hotel room on June 4, 1965.

Numerous finger and palm prints of appellant were found on said door on Monday morning, May 31, 1965. This door had been washed with an "all-purpose cleanser" on the preceding Wednesday or Thursday. The testimony is that such a washing would have completely obliterated any prints then on the door.

Appellant had an explanation for his prints being on the door. He testified that he had been incarcerated in the county jail at San Bruno and had gotten out on Wednesday, May 26, 1965; that he went to the property clerk's office about 11:30 a.m. of that day to get some keys that belonged to him; that he was told there to go to the burglary detail in the same building; that in entering the property clerk's office he pressed both of his hands upon the door in order to open it.

The jury did not have to believe this testimony of appellant. Inspector Siegfried of the San Francisco Police Department testified that on the day of his arrest, June 2, 1965, appellant stated to him that "he hadn't been anywhere near the Hall of Justice" since April 27, 1965, the day when he was sentenced to thirty days in the county jail.

Inspector Kramer of the San Francisco Police Department testified as to the location on the door of appellant's palm prints and fingerprints.

Thereafter appellant took the stand and gave the following answer to the following question: "Q. Uh-huh. Can you tell me, Mr. Brock, how your fingerprints and palm prints got on all the different areas of the door that was described by Inspector Kramer? A. Well, now, I cannot explain how my prints could get all spread around that far. I merely used one portion of the door to enter. Now, I'm not saying maybe someone that's—I think they are getting—they're kind of getting things a bit saying my prints could be in that many places. I don't see how it could possibly be that many places because, like I said, I used one section of the door to enter, and I had to use both hands to shove or push the door."

Appellant cites *People* v. *Hall,* 62 Cal.2d 104 [41 Cal.Rptr. 284, 396 P.2d 700]. There a second degree murder conviction was reversed on the ground of the insufficiency of the evidence. One of the items of evidence was discussed as follows:

"The police found a man's shoeprints, including two heelprints, in the blood near the body. Although one of defendant's heels bears an unusual gash that might be expected to show up in a print, there is no evidence of such a gash in the heelprint."

We fail to see the connection between the shoe-prints in the *Hall* case and the finger and palm prints in the instant case. Nor do we accept appellant's contention that his "fingerprints are inconclusive since they have been explained away . . . ."

Appellant makes the further statement that "All other evidence [i.e., other than the prints] was purely speculative." We do not think that the expert testimony positively identifying the pry bar found in appellant's room as the same tool which had left marks on the door in question was in any sense "speculative."

There is no doubt in our mind that the evidence is sufficient to support the conviction in action 65627.

### *Variance Between Pleading and Proof in Action 65648*

The information alleged that the automobile burglarized was that of Stanley Karatz. The proof showed that it belonged to Bernard Krause.

Krause had driven Karatz to the Merchandise Mart on Market Street. Karatz left his briefcase in the car and Krause locked the doors. When they returned, the car had been broken into and the briefcase had been taken. This was the briefcase which the police found in appellant's room.

The foregoing allegation with respect to the owner of the property burglarized was not a material error. (Pen. Code, § 956.) A variance is not material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense. (*People* v. *Williams,* 27 Cal.2d 220, 226 [163 P.2d 692]; see also *People* v. *D'Antignac,* 101 Cal.App.2d 7, 8 [224 P.2d 900], and *People* v. *McGilver,* 67 Cal. 55, 56 [7 P. 49].)

Respondent's petition for a rehearing was denied May 31, 1967.