[Crim. No. 14606.   Second Dist., Div. Three.   Feb. 27, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND
EARL PATTERSON, Defendant and Appellant.

Rafus J. Carter for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lola M. McAlpin, Deputy Attorney General, for Plaintiff and Respondent.

FRAMPTON, J. pro tem.*—

### Statement of the Case

Defendant was jointly charged with Frank Darwain Yates with the crime of burglary, a felony, in violation of section 459, Penal Code. Before trial, Yates entered a plea of guilty and the degree was fixed as burglary in the second degree. Upon trial the jury found the defendant guilty as charged and fixed the degree as burglary in the second degree. A probation report was waived, immediate sentence was requested, and sentence followed to state prison. The sentence was ordered to run concurrently with any other sentence to be served. The appeal is from the judgment.

### Statement of Facts

Richard Beach, the manager of the Surfside Eight Bar, located at 16624 South Normandie Avenue in the City of Gardena, closed the premises at 2 a.m. on September 17, 1967, and left the premises at 2:10 a.m. In closing the bar, he locked and secured the doors and windows. When he left the premises everything was in order. No one was given permission to enter the premises or remove anything from the premises. He returned at 8 a.m. on the 17th and observed that the front door of the premises had been broken open and was standing open. The lock on the door had been damaged. He described the interior of the premises as follows: "Well, the place was wrecked. The cigarette machine was busted into. All the cigarettes taken and the change. The juke box was busted open. The change was taken from it. Had two pool tables which were busted open. The change was taken from those and everything, almost everything in the back bar was threw [sic] out on the floor. It was ransacked. The television set was missing."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The television set was described as a "21 inch console," about 3½ feet in length and 2½ feet in height. It had two legs missing. They had been removed so that the set would fit on top of the bar where it rested at the time of the burglary. Beach had never seen one person move the set from one place to another in the bar.

Mr. Beach had not removed the coins and had no way of knowing how much money was contained in the coin operated machines. There were empty money bags on the premises. A door leading from the back door into the supply room had been broken open, but nothing was missing from the store-room. The windows in the dressing rooms had been broken open, and the bars outside the windows had been ripped off. The establishment used towels marked with the initials "K.T.S.[C]." Some of these towels were on the premises at the time of the burglary.

Albert Johnson, a police officer for the City of Gardena, testified that on September 17, 1967, he was working with Officer Fruzyna on patrol duty; they were driving a black and white police vehicle, and were dressed in full uniform; at approximately 5 a.m. on the 17th they observed a 1967 Ford Galaxie, bronze in color, heading northbound on Normandie Avenue; the defendant and Yates were observed in the vehicle briefly and then again on foot; he could not tell which one was driving the vehicle; the trunk of the vehicle was open, exposing a large television set to view.

Officer Johnson testified that when he first observed the Ford the patrol unit was traveling southbound on Normandie Avenue; upon passing it and observing the television set in the trunk, the officers made a U-turn and approached the Ford Galaxie; at this time the Ford increased its speed and continued approximately a block and a half, accelerating rapidly while making a right turn; the officers followed in the same direction, but momentarily lost sight of the vehicle as it turned the corner; thereafter, the Ford was observed parked at an angle on the south curb of Gardena Boulevard; the lights on the car had not been turned off; he observed the defendant and Yates running very fast eastbound on Gardena Boulevard; the police vehicle was stopped and parked; Officer Johnson exited from the passenger side and apprehended Yates in a parking lot; the defendant then stopped running and surrendered himself; both were placed under arrest and returned to the Ford vehicle. Officer Johnson testified that Yates and the defendant were placed under arrest for bur-

glary because of the unusually late hour, their possession of a television set exposed to view in the trunk of their vehicle, and because they fled from the officers both in their vehicle and on foot.

The Ford vehicle belonged to Yates. Officer Johnson testified that upon returning to the Ford he again observed the television set; upon searching the vehicle there were found numerous packs of cigarettes spread over the rear floor of the vehicle; many cigarette packs were also found in a box and in a large paper sack in the vehicle; an electric shaver and various towels bearing the initials K.T.S.[C.] were found; one towel was lying on the sidewalk outside the Ford vehicle and the others were found in the rear seat of the vehicle; the Ford was in motion approximately 200 feet north of the location of the Surfside Eight Bar when the officers first observed it.

Officer Johnson testified further that after the defendant and Yates were placed under arrest, Officer Propster, who had responded to a call at the scene, found a money bag with money in it.

Richard Propster, a police officer for the City of Gardena, testified that he arrived at the scene of the arrest between 5:30 and 5:45 a.m.; he found a money bag with money in it. The money bag was similar to a bag described by Beach as having been in his establishment when he closed it. Officer Propster testified that he found the bag and its contents behind the west end of a wall at the scene of the arrest. Officer Johnson had described this wall as a brick wall about four feet high bordering the front of the parking lot where Yates was apprehended.

Brian Fruzyna, a police officer for the City of Gardena, testified that he was working with Officer Johnson; when he first observed the defendant upon his arrest, "I observed him to be very wet, apparently from perspiration. His forehead was very moist, beaded. His shirt was very wet under the armpits. The back of his shirt was wet, as well. And his pants were wet to some degree as well. He was extremely perspired." He was sober, in the opinion of Officer Fruzyna.

Earl Pitts, a police officer for the City of Gardena, testified that during his investigation of the case he talked to the defendant at the Gardena Police Department headquarters on September 18, 1967; during the course of this conversation he asked the defendant about the television set; the defendant stated at first that he knew nothing about the burglary; when confronted with some of the facts related in the police report,

he stated that "he was awakened by Mr. Yates and that he got out of the car and next to the car, on the ground, was a television set. Yates had asked him to help him load it into the trunk of the car and he states he did"; the defendant participated in the conversation freely and voluntarily.[1]

## The Defense

Frank Yates, the codefendant, testified that on September 16, 1967, he was in company with Pat Nagle, a female person, and the defendant; they went to the Chit-Chat Bar in Bell Gardens somewhere between 3 and 5 p.m. where they remained until about 1 a.m. on September 17th; while there the defendant had too much to drink; about 12, or a little after, the defendant went to Yates' car and went to sleep in the back seat; he and Nagle tried to waken the defendant without success; Yates and Nagle, with the defendant asleep on the back seat, then drove to the Surfside Bar in Gardena where Yates and Nagle had a glass of beer; this was the place that was subsequently burglarized; the defendant remained in the car asleep; they left the Surfside Bar and drove to Yates' house where Nagle stayed; Yates then drove back to the Surfside Bar with the defendant still asleep in the rear seat; the bar was closed at this time; Yates entered the bar through a window in the rest room and removed the television set and other items identified by Beach; he saw the officers pursuing him; at this time the defendant was in the back seat leaning on the front seat and "He wanted me to let him out of the car"; the defendant had awakened when Yates slammed the car door and started pulling away; Yates then told the defendant what he had done; he let the defendant out of the car but before he could take off again the police were coming, so "I jumped out and ran"; the defendant got out of the car first; he had known the defendant seven or eight years; Yates told the police that he had stolen the articles found in his car and that defendant had nothing to do with it. On cross-examination, when asked if he had been previously convicted of a felony, Yates answered that he had been twice previously convicted of burglary. There was a motion to strike the question and answer relating to the previous convictions on the

---

[1]No objection was raised as to conversations with the police on the grounds that the warnings required under *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], had not been given. Such objection is waived unless raised at the trial level. (*People* v. *Castro*, 257 Cal.App.2d 643, 645-646 [65 Cal.Rptr. 62]; *People* v. *Marquez*, 259 Cal.App.2d 593, 602 [66 Cal.Rptr. 615].)

grounds "because this is a witness, it is incompetent, irrelevant and immaterial." There was also a request for an admonition. The motion and the request were denied.

Pat Nagle testified that Yates was her boy friend; she was with Yates and the defendant on the evening of September 16, 1967, and the morning of the 17th; about 12:30 a.m. on the 17th the defendant was "feeling good" and left the Chit-Chat Bar to go and sleep in Yates' car; when she and Yates returned to the car the defendant was asleep in the back seat; they could not wake him; they then drove to Yates' apartment where she remained and Yates drove away; she saw Yates again about two weeks later.

The defendant testified that he left work about noon on September 16, 1967; he was tired and "beat"; later that day he accompanied Yates and Nagle to the Chit-Chat Bar where he remained until about midnight; he had a number of drinks while there; about midnight he left the bar and went to sleep in the back seat of Yates' car; the next thing he recalled was when the police "hollered at me to stop"; he wanted to get out of the car because Yates had told him what he did and "I wanted to get away from him"; he was in the back seat leaning over the front when Yates told him what he had done, that "he had just burglarized a bar"; when Yates told him what he had done "I told him to let me get out of the car"; Yates turned the corner and stopped; when he stopped the defendant opened the door and jumped out; he saw no police officers up to this time; he first saw the police "When they hollered at me to stop"; he ran into the parking lot because he wanted to get away; he first saw the television set sticking out of the trunk of the car after he was arrested and taken back to the car; he did not participate in the burglary. The defendant on cross-examination testified, without objection, that he was frightened when Yates told him what he had done because he was then on parole upon a burglary conviction suffered in 1963. In response to questioning he gave the following answers: "Q. Was that the only time you have ever been convicted of a felony? A. No, sir. Q. How many times have you? A. Twice, I believe. Q. What were those for? A. Forgery and Burglary. On the burglary, there was an assault." The foregoing questions and answers came in without objection, motion to strike, or request for an admonition. The defendant denied that he had told the officers that he had helped Yates load the television set in the trunk of the Ford.

## Contentions

■ The defendant states that "The sole issue to be determined in this Appeal is as to whether or not there was a violation of due process under the Fourteenth Amendment to the United States Constitution, and its counterpart in the California Constitution by admitting evidence of the prior convictions against the Appellant."

The defendant argues that since it was not shown that at the time he suffered the prior convictions he was represented by counsel, evidence of such priors was inadmissible for the purpose of impeachment, relying on the rule announced in *Burgett* v. *Texas* (1967) 389 U.S. 109 [19 L.Ed.2d 319, 88 S.Ct. 258], wherein it was held that where the state attempts to establish that a defendant, for the purpose of increasing the punishment, has suffered a previous conviction of felony, the burden rests upon the prosecution to show that at the time of such previous conviction the defendant was represented by counsel.

■ It is well established that an accused who takes the witness stand and testifies in his own behalf may be impeached by a showing that he has suffered a prior conviction of felony. (See Evid. Code, § 788 and cases cited under annotation thereto.) It is also held that the use of a constitutionally invalid prior conviction to impeach testimonial credibility is improper, and that to allow such impeachment is error under California law. Such error is of federal constitutional dimensions, but is not per se prejudicial. (*People* v. *Coffey,* 67 Cal.2d 204, 218 [60 Cal.Rptr. 457, 430 P.2d 15].)

■ We are of the opinion that the attack on the prior convictions must first be made in the trial court and that where the defendant has failed to raise the constitutionality of the judgments of prior conviction at the trial level he may not for the first time collaterally attack them on appeal. (See *People* v. *Coffey,* 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15].) *Coffey* was decided on July 28, 1967. The case at bench was tried commencing October 31, 1967. The right to raise the constitutionality of his prior conviction under the rule laid down in *Coffey,* therefore, was available to the defendant at trial.

■ The question of the defendant's guilt does not present a close question on the evidence. The record discloses that the vehicle in which the stolen merchandise was found was first seen moving some two hundred feet from the scene of the burglary. The condition of the premises after the burglary

and the quantity and character of the items stolen, support a strong inference that at least two persons participated in the act of breaking into the premises, breaking open and ransacking the automatic equipment in the building and carrying away a bulky and heavy television set. The defendant's appearance of having perspired heavily a few moments prior to his arrest also supports a strong inference that he participated in the physical exertion necessary to accomplish the burglary. In addition, the defendant fled when pursued by the police.

Viewing the entire record, we are satisfied that the error in receiving in evidence the defendant's testimony that he had been previously convicted of felony, to impeach his testimonial credibility, was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The judgment is affirmed.

Cobey, Acting P. J., and Schweitzer, J., concurred.