[Crim. No. 15914.  Second Dist., Div. Five.  Apr. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
FLOYD JONES II, Defendant and Appellant.

---

**COUNSEL**

Howard C. McArdle, Jr., under appointment by the Court of Appeal, and Dicker & McArdle for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey S. Wohlner, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**BRANDLER, J.***—

### Statement of the Case

Defendant was charged by information with .the crime of armed robbery. Defendant was duly arraigned, pleaded not guilty and after trial by jury, was found guilty of robbery of the first degree. Defendant's motion for a new trial was denied and he was sentenced to state prison. Defendant appeals from the judgment.

### Statement of Facts

On December 23, 1967, between 12:30 and 1 p.m., two men who had made an 81-cent purchase approached Mrs. Johnson, clerk-cashier, at Fine's Market at 2207 West Florence Avenue, Los Angeles. One of the men (not the defendant) leaned over and said, "My partner has a gun and this is a stickup." He told the clerk three or four times to give him the money out of the cash register. He took the money out of the register during which time Mrs. Johnson's hands were held up and defendant had a gun in his hand pointed directly at her and he then told her to put her hands down. After taking about $700 or $800, the two men ran out of the store. Defendant was standing just a few feet from Mrs. Johnson with no covering over his face at the time of the robbery. She identified defendant at a police lineup as the man who had the gun that day, and testified that People's exhibit 1 (.38 calibre revolver) looks like the gun he had in his hand.

Lloyd Harris was driving into Fine's Market at about 1 p.m., December 23, when he saw two men run across Fine's parking lot, get into a car and speed away. He followed the car for about two miles never losing sight of it. The car weaved in and out of the traffic with Harris pursuing about three or four car lengths behind. He observed defendant, who was the passenger in the car, repeatedly looking back. People's exhibit 2 is a photograph of the rear portion of the car he followed.

Charles G. LeFrois, a police officer, saw defendant and another male Negro get into the vehicle depicted in People's exhibit 2 on December 28. Defendant was driving the car when it was stopped at 51st and Normandie. Defendant was arrested and while being booked a key was recovered from his pocket. Attached to the key was a tag with an address. The officer later recovered the .38 calibre revolver from a room at that address. The gun had five live rounds in the chamber.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

### Defense Testimony

Harry Daniel, a Los Angeles County deputy clerk, testified that he was 5 feet, 11 inches tall, and that he and defendant were arrested while in a car on December 28 for the robbery in question; that at a police lineup, he observed Mrs. Johnson look in his direction and then turn to a police officer and nod her head.

Daniel testified that he left work December 23 at about 1:35 p.m. at Fourth Avenue and Pico Boulevard, went to a house on Fifth Avenue and Country Club Drive, about one block away, and saw defendant there.

Miss Thelma Nelson, defendant's girl friend and mother of his five-month-old daughter, testified that when she arrived at the Fifth Avenue and Country Club Drive home at 1:20 p.m., December 23, 1967, defendant was there. She said that the car depicted in People's exhibit 2 belonged to her, and that she had loaned it to defendant for the very first time sometime after 3:30 p.m., December 23.

Defendant testified that he arrived at the Country Club Drive address December 23, between 10 and 10:30 a.m.; that he left between 3 and 4 p.m.; that he did not commit the robbery at Fine's Market, and that People's exhibit 1 was his gun.

### Rebuttal Testimony

Officer Lawson of the Los Angeles Police Department testified that six persons, including defendant and Harry Daniel, were in the lineup; that Mrs. Johnson, who attended the lineup, only identified defendant.

### Defendant's Contentions

Defendant contends that the judgment of conviction should be reversed for the following reasons: (1) People's exhibit 2 (photograph of the car) was erroneously received in evidence; (2) defendant was prejudiced by the use of improper methods of impeachment by the district attorney; (3) the trial court should have declared a mistrial "sua sponte," and (4) the trial court abused its discretion in reviewing the evidence for the jury.

### People's Exhibit 2 Was Properly Received in Evidence

Notwithstanding the provisions of Evidence Code section 1401, subdivision (a), which requires authentication of a writing before it may be received in evidence, defense counsel's failure to object to People's 2 precludes that issue being raised for the first time on appeal.

However, there was sufficient authentication of the photograph.

Lloyd Harris identified the exhibit as a photograph of the rear portion of the car he followed, and Officer LeFrois testified that he arrested defendant in the vehicle depicted in the photograph. (Witkin, Cal. Evidence (2d ed., 1966) § 636, p. 599.)

■ Defendant, having failed to object to the introduction of the exhibit into evidence, may not raise that issue on appeal for the first time. (*People* v. *Pineda,* 253 Cal.App.2d 443, 465 [62 Cal.Rptr. 144] [right on appeal to object to evidence deemed waived by failure to object at trial]; *People* v. *Patterson,* 270 Cal.App.2d 268, 272, fn. 1 [75 Cal.Rptr. 485] [where objection to conversation with police was waived because not raised at trial].)

### The Prosecutor's Method of Impeachment Was Proper

■ Section 780 of the Evidence Code provides that it is proper to show the existence of bias, interest or other motive. The cross-examination, therefore, of Miss Nelson, defendant's girl friend and mother of his five-month-old daughter, and Mrs. Idabelle Martin, Miss Nelson's mother, was proper as tending to show their interest and bias for the defendant.

■ The attempted impeachment of Harry Daniel by the question asked of him by the district attorney whether he was in custody because of outstanding traffic warrants, although concedely improper, was not prejudicial in view of the court's admonition to the jury.[1]

Similarly, the claimed improper impeachment of the defendant is without merit.

### The Trial Judge Did Not Err in Failing to Declare a Mistrial

During the progress of the trial improper hearsay evidence was introduced by a police officer that the night "hot sheet" was corrected to read that the license number SWD 083 was meant to read SQD 083. When defense counsel moved that such testimony be stricken, the court stated to counsel at the bench that pursuant to Evidence Code section 405 he felt error had been committed and that the aforementioned evidence should more properly first have been heard outside the presence of the jury to

---

[1]The trial judge admonished the jury, saying: ". . . there is nothing improper at all i[n] counsel asking questions in good faith, if he believes he has the facts to substantiate the questions on the one hand. On the other hand, it is very irrelevant to this case and has utterly nothing to do with it as to whether there were traffic warrants or not . . . outstanding for Mr. Daniel, except perhaps remotely relevant on the question of the identification of [defendant] as the participant or not . . . is the question of whether some other witness identified Mr. Daniel and [he] was held in jail as a consequence of that identification, or whether he was held in jail as a consequence of traffic warrants. That's why counsel is asking the question. It is very collateral."

determine its admissibility. The trial judge advised all counsel that he was willing and prepared to declare a mistrial. Defense counsel first stated that he was willing to have the jury dismissed, but after a conference with defendant he asked the court to grant his motion to strike the officer's testimony and proceed with the case. Since neither the defendant nor defense counsel desired to move for a mistrial, the court granted defendant's motion to strike Officer LeFrois' answer and the jury was instructed to disregard it in its entirety.

■ The trial judge properly granted defendant's motion to strike the officer's testimony. Although this testimony was before the jury, the judge admonished them to disregard it entirely and not to consider it in their determination of the case. In light of the fact that defendant was identified by several eyewitnesses, the officer's testimony was merely corroborative. If defendant himself, with his attorney's concurrence, decided to continue the trial, it cannot be said that the judge committed prejudicial error in allowing it to continue.

The error, if any, was cured by the court's admonition to the jury.[2]

### The Trial Judge Did Not Invade the Province of the Jury by His Comments

■ It is proper for the court to comment on the credibility of witnesses and on the evidence. (*People* v. *Mason,* 259 Cal.App.2d 30, 39 [66 Cal. Rptr. 601].)

■ Where the trial court instructs the jury that they can wholly disregard any comment by him,[3] that they are the exclusive judges of the credi-

---

[2]"THE COURT: The motion to strike, rather, made by Mr. Wright, is granted. The witness' last answer is stricken. Ladies and gentlemen, you are instructed to disregard it in its entirety and treat it as if you had never heard it."

[3]"Ladies and gentlemen of the jury, by the Constitution of California, a Judge of this court presiding in the trial of an action [is] authorized within proper bounds to comment on the evidence and the testimony and the credibility of any witness. I would caution you that it is your right and duty to exercise the same independent judgment in weighing the Judge's comment on the evidence as you are entitled to exercise in weighing the arguments of counsel.

"You will keep in mind that you are the exclusive judges of the credibility of the witnesses and of all questions of fact submitted to you. Such authority as the trial judge has to express his personal thought on any of these matters, is confined to the sole purpose of aiding you in arriving at a verdict and may not be used and is not used in this case to impose his will upon you or to compel a verdict. I do not intend to comment on all of the evidence and, as to the few comments which I will make, they are made solely to aid you, if it is an aid to you, in arriving at a verdict in this case.

"If I state the evidence in a matter which does not accord with your recollection, you are not at all bound by my statement of the evidence, and if you have any

bility of witnesses and of all questions of fact submitted to them, and that his comments were for the purpose of aiding the jury in reaching a verdict but not to compel one, there is no reversible error in connection with the court's comments on the evidence. The jury must remain as the exclusive arbiter of questions of fact and the credibility of witnesses, and the judge should make it clear that his views are not binding but advisory only. (*People* v. *Mendoza,* 165 Cal.App.2d 731, 735-736 [332 P.2d 117].)

The trial judge's comments were within proper limited bounds. (*People* v. *Mendoza, supra,* pp. 735-736; *People* v. *Ivy,* 244 Cal.App.2d 406 [53 Cal.Rptr. 47].)

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.

---

doubts or any questions at all about any of the evidence presented in this case, you are at liberty at any time during your deliberations to ask the baliff [*sic*] to [be] brought back into the courtroom so that the testimony can be read back to you.

".    .    .    .    .    .    .    .    .    .    .    .

"Remember that the comments that the Court has just made following the close of counsel's argument are not in any way binding on you. It may be of no aid to you, whatsoever, but the only purpose of making them was to aid you in arriving at a verdict, if they have that effect. The Court again emphasizes that it is not expressing its opinion as to what your verdict should be. The Court is not stating i[t] believes or disbelieves the testimony of any witness who has testified in this case."